583 So.2d 336 (1991)
Carl Leroy THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-2549.
District Court of Appeal of Florida, Fifth District.
March 28, 1991.
On Motion for Rehearing/Certification August 8, 1991.
*337 James B. Gibson, Public Defender and Barbara L. Condon, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC
COWART, Judge.
Orlando Municipal Ordinance, Chapter 10, Section 10.08, provides:
No person shall ride a bicycle on the streets of the city without having a bell or gong with which to warn pedestrians and drivers of vehicles at street crossings.
Orlando Municipal Ordinance, Chapter 10, Section 1.08 provides that for a violation of the above municipal ordinance the penalty is punishment "by a fine not exceeding five-hundred dollars ($500.00) and/or a definite term of imprisonment not exceeding sixty (60) days."
A law enforcement officer observed the defendant riding a bicycle on a street in the City of Orlando without having a bell or a gong as required by the municipal ordinance. The officer stopped the defendant and arrested him for violation of the municipal ordinance. Incidental to that arrest, the officer searched the defendant and found him to be carrying a concealed firearm on his person. The defendant was charged with carrying a concealed firearm in violation of section 790.01(2), Florida Statutes.
The defendant moved to suppress the seized firearm and argued (1) that the stop was pretextual, (2) that because a violation of the municipal ordinance was not a "crime" he could not be arrested for a violation of the ordinance, (3) that the search was not incidental to an arrest because the defendant was not arrested or cited for violation of the ordinance, (4) that the municipal ordinance, in providing for imprisonment for its violation, was unconstitutional, (5) that the ordinance was being selectively enforced, (6) that the ordinance was unreasonable in light of the fact that state statutes regulating similar matters have been decriminalized, and (7) that the municipal ordinance was invalid in that the *338 regulation of bicycles was preempted by state statutes.
The trial court found the stop was not pretextual, that state statutes have not preempted the regulation of bicycles by a municipality, that the ordinance and its penalty were constitutional, reasonable and valid, that the defendant was validly arrested pursuant to section 901.15(1), Florida Statutes, because of a violation of the municipal ordinance, that the search was incidental to a valid arrest, and denied the motion to suppress. The defendant pleaded nolo contendere to the concealed firearm charge, was sentenced to probation, and appeals.

PRETEXTUAL STOP:
In determining whether a stop is a mere pretext an objective standard is applied to determine if under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose. Kehoe v. State, 521 So.2d 1094 (Fla. 1988); Monroe v. State, 543 So.2d 298 (Fla. 5th DCA 1989); see also, United States v. Smith, 799 F.2d 704 (11th Cir.1986), Cf., Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). The trial court found that under the facts and circumstances the stop was not pretextual. The record on appeal reflects competent substantial evidence to support this factual finding by the trial judge. The arresting officer personally observed the defendant riding, on a street of the city, a bicycle not equipped with the required sounding device. Therefore, the finding of the trial court will not be disturbed on appeal. See Reynolds v. State, 222 So.2d 246 (Fla. 3d DCA 1969).

ARREST FOR VIOLATION OF A MUNICIPAL ORDINANCE:
Section 901.15(1), Florida Statutes, provides in relevant part:
A law enforcement officer may arrest a person without a warrant when:
(1) The person has ... violated a municipal ... ordinance in the presence of the officer.
The unambiguous language of this statute shows a clear legislative intent to specifically authorize a law enforcement officer to arrest a person who violates a municipal ordinance in the officer's presence.
Some dissention to long established law results from an erroneous assumption and a deduction based on that assumption. The assumption is that one can be arrested only for the commission of a "crime." The deduction is that if the violation of a municipal ordinance is not denoted or described as a "crime" one cannot be arrested for that violation. The assumption is based on a misunderstanding of the purpose of an arrest. An arrest is the act of legal authority taking actual physical custody of a citizen and is a restraint on that citizen's liberty but it is an error to assume that is the purpose of the arrest. It is not. The purpose of an arrest or apprehension and resulting detention is to cause the detained person to be identified and to be forthcoming to answer some demand, charge or accusation against him. Custody and detention is a consequence, or by-product, of that purpose. An arrest, or any other word describing the same act, is a necessary part of any system which, to be effective, requires a person to be identified and placed under some constraint to appear and participate in a proceeding the result of which may be undesired, without regard to whether that proceeding is denoted to be criminal, or whether one possible undesired result of the proceeding may, or may not, be confinement as a penalty. There is no constitutional prohibition against a statute providing for the arrest of a person violating a municipal ordinance. Whether the term "crime" includes violations of municipal ordinances depends in any state upon the local definition of "crime" and "misdemeanor." Nevertheless, historically, crimes have been generally considered offenses against the state and a state has been construed to mean, literally, the commonwealth in its sovereign capacity. Cities have not been considered sovereignties and, accordingly, violations of municipal ordinances have not been legally classified as *339 "crimes."[1]
Note should be taken of several provisions of the Florida Rules of Criminal Procedure which recognize that violations of municipal ordinances are not considered crimes or misdemeanors; that persons are arrested and held in confinement to answer charges of violations of municipal ordinances and that for such violation they may be subject to imprisonment as a penalty. Rule 3.111(b)(1) provides that counsel does not have to be provided to an indigent person in a prosecution for a misdemeanor or a violation of a municipal ordinance if the judge files a pretrial statement that no imprisonment will result from conviction. Rule 3.125(b) provides that if a person is arrested for violation of a municipal or county ordinance triable in the county, the arresting officer may issue a notice to appear except in six specified circumstances. Rule 3.131(a) provides that "every person charged with a crime or violation of a municipal or county ordinance shall be entitled to pretrial release [from pretrial confinement resulting from arrest] on reasonable conditions."

SEARCH INCIDENT TO ARREST:
A lawful arrest establishes the authority for a full search of the person arrested being an exception to the warrant requirement and reasonable under the Fourth Amendment. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); State v. Gustafson, 258 So.2d 1 (Fla. 1972), affirmed, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). See also D.L.C. v. State, 298 So.2d 480 (Fla. 1st DCA 1974) (juvenile defendant's violation of municipal ordinance and admission that he had been drinking alcoholic beverages justified arrest, and marijuana found on his person in search pursuant to arrest was admissible as evidence). The Supreme Court in Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) held that evidence obtained after a search incident to an arrest in reliance on a municipal ordinance should not be suppressed even when the ordinance is subsequently declared unconstitutional and notwithstanding that the defendant was not charged or tried for violation of that ordinance. The arrest of the defendant in the instant case for a violation of Orlando Municipal Ordinance 10.08 was lawful. Therefore the search of the defendant incident to the arrest was lawful.

CONSTITUTIONALITY OF ORDINANCE:
Article VIII, § 2(b) of the Florida Constitution provides:
Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
Chapter 166, Florida Statutes, the home rule legislation, implements Article VIII § 2. As a general rule the only constitutional limitation on municipal power is that such power must be exercised for a municipal purpose. Therefore, municipalities are not dependent on the legislature for further authorization. Legislative statutes may be relevant to determine limitations of authority. State v. City of Sunrise, 354 So.2d 1206 (Fla. 1978). See also, City of Ormond Beach v. County of Volusia, 535 So.2d 302 (Fla. 5th DCA 1988). A municipality may, under its broad home rule powers, prescribe penalties for violation of its ordinances. See, 1989 Opinion Attorney General, Florida, No. 89-24, (April 21, 1989).
Nor has the defendant demonstrated that the adoption by the City of Orlando of its bicycle bell ordinance (section 10.08) or its penalty (section 1.08) were beyond the grant of powers contained in the charter granted the city by the state legislature.
There is no constitutional or statutory limitation on the city's power to prescribe incarceration as a penalty for violation of the city ordinance involved in this case. *340 The wisdom or "reasonableness" of statutes and ordinances are matters solely within the discretion and legitimate concern of the legislative branch of government in enacting or adopting them. If a statute, or its enactment, does not violate a constitutional limitation and if a city ordinance, or its adoption, is not prohibited by constitutional provision and is within the powers granted the city by the legislature, by general statutes or special statutes granting city charter powers, such statutes or ordinances are valid and it is beyond the judicial function and power for courts to declare them invalid on the ground or belief that they are, for any reason, "unreasonable" or "undesirable."
Chapter 162, which permits enforcement of municipal and county ordinances either through code enforcement boards or officers, limits punishment to a fine. However, the statute provides "[n]othing contained in this section shall prohibit a ... municipality from enforcing its code or ordinances by any other means." Further, in determining that those convicted of non-criminal violations could not be jailed, the legislature added "except as provided ... by ordinance of any city or county." § 775.082(5), Fla. Stat. (1989).

SELECTIVE ENFORCEMENT:
In order to constitute a denial of equal protection the selective enforcement must be deliberately based on an unjustifiable standard such as race, religion or other arbitrary classification. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Bell v. State, 369 So.2d 932 (Fla. 1979); see also, King v. State, 557 So.2d 899 (Fla. 5th DCA 1990), rev. denied, 564 So.2d 1086 (Fla. 1990). The mere failure to prosecute all offenders is not grounds for a claim of denial of equal protection. Bell; Moss v. Hornig, 314 F.2d 89 (2d Cir.1963). There has been no showing that enforcement of the Orlando Municipal Ordinance in this instance was deliberately based on an arbitrary classification.

PREEMPTION:
A municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden. Rinzler v. Carson, 262 So.2d 661 (Fla. 1972); Donisi v. Trout, 415 So.2d 730 (Fla. 4th DCA 1981), rev. denied, 426 So.2d 29 (1983). The question is whether the legislature has denied municipalities the right to legislate on the subject. The mere existence of state regulations does not preclude a local authority from adding additional requirements as long as no conflict exists. 5 McQuillin, Municipal Corporations § 15.20 (3d Ed.) Section 316.2065, Florida Statutes, requires certain equipment (lights, reflectors, brakes) on bicycles but does not prohibit bells, gongs or other audible warning devices.
The legal concept of preemption does not apply to the relationship between a state statute and a municipal ordinance for basically the same reason the violation of a municipal ordinance is not considered a "crime." The reason again is that a municipality is not a sovereignty. The concept of preemption, as well as that of comity, is best understood and explained in terms of sovereignty and accommodations between sovereign powers. In concept neither the states nor the federal government created the other  the people created each and except as they were conceived and created unequal, both entities are equal and sovereign. Comity is that respect and courtesy that governmental equals accord the acts of each other as a privilege, not as a matter of right, but out of deference and good will. On the other hand, not even sovereign equals can always amiably occupy or act within the same space at the same time and some rule must apply. This is where the concept of preemption applies. Preemption has connotations of mild belligerency, hostility or disagreement, also implications of superiority and subservience, and really means that while both of two sovereignties are theoretically equal, the less powerful "equal" (a state) cannot legislate where its more powerful "equal" (the federal government) legislates.[2] The doctrines *341 of comity and preemption have nothing to do with the relationship between a municipality and a sovereign state whose legislature has created the municipality. That relationship is one of a creature and its creator. See Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); see also, City of Wilton Manors v. Starling, 121 So.2d 172 (Fla. 2d DCA 1960). The city has no sovereign power and exists and exercises all governmental power at the will of the state legislature. If a municipality has any power that displeases the state legislature the State does not have to be polite and tolerant (comity) nor push or shove by asserting a superior inconsistent power (preemption)  the State can merely withdraw that municipal power or it may melt its creature down and repour it into a smaller mold, thereby recreating the city without the offending power. The State can do this by enacting a general law or a special law amending or repealing the city's charter. The City of Orlando now has the power to adopt ordinances, such as safety ordinances requiring bells on bicycles, and the power to provide for enforcement of ordinances by penalties, including imprisonment for 60 days. If the State desires to limit or eliminate ("preempt") this power of the city, the state legislature need only enact a statute providing simply that the City of Orlando may not require bells on bicycles or that the City of Orlando may not provide for imprisonment as a penalty for the violation of any ordinance. The state legislature has not seen fit to so restrict the city's municipal power and state judicial officers should not attempt to do it by judicial decree.
While there is a judicial remedy for law enforcement abuses, such as pretextual stops and selective enforcement practices, that remedy is not for the courts to hold invalid the statute or ordinance being abused. Otherwise law enforcement officers, members of the executive branch of government, could, by abusive enforcement practices, cause the judicial branch to invalidate statutes or ordinances, validly enacted by the legislative branch. This would violate constitutional provisions embodying separation of powers doctrine.[3]
Orlando Municipal Ordinance, Chapter 10, Section 10.08 is a proper exercise of the City of Orlando's police power.[4] It does not conflict with constitutional or statutory limitations, nor is it "preempted" by existing state statutes. The arrest and subsequent search of the defendant was valid. The denial of the defendant's motion to suppress was proper.
AFFIRMED.
COBB, W. SHARP, GOSHORN, PETERSON and DIAMANTIS, JJ., concur.
HARRIS, J., dissents with opinion with which DAUKSCH and GRIFFIN, JJ., concur.
HARRIS, Judge, dissenting.
I respectfully dissent.
Carl Leroy Thomas pled nolo contendere to carrying a concealed weapon but appeals the trial court's refusal to suppress evidence found as a result of an arrest for the violation of a municipal ordinance.
At about 9:00 a.m. on June 16, 1989, Officer Kevin Bass was patrolling a predominantly black, high drug crime area in Orlando when he observed Thomas riding a bicycle not equipped with a bell or gong as required by a city ordinance. Thomas was immediately stopped, placed under arrest, handcuffed and searched because of this violation under the authority of section 901.15, Florida Statutes (1989):
A law enforcement officer may arrest a person when:
(1) The person has committed a felony or misdemeanor or violated a municipal or *342 county ordinance in the presence of the officer ...
During the search a handgun was found concealed in Thomas' pocket.
Thomas claims that the stop was pretextual and, since he was charged with carrying a concealed weapon rather than a violation of the city ordinance, the search was not incident to a lawful arrest. He further claims that the ordinance is unreasonable and is being selectively enforced. He also urges that bicycle regulation is preempted by the state traffic regulations.
A policy authorizing an arrest (as opposed to the issuance of a summons) for the violation of such an ordinance seems extreme, particularly when one considers that an aggressive, evenhanded application of the policy could net untold numbers of 10-year-olds. But the problem seems more profound than selective enforcement or the doctrine of preemption or pretextual stop.[1] The problem is that Thomas was arrested and subjected to jail for the violation of a noncriminal municipal ordinance.[2]
I confess to being one of those confused and concerned by the concept of incarceration  not necessarily arrest  for non-criminal conduct. If, in fact, the purpose of the "arrest" (as stated in the majority) is merely "to cause the detained person to be identified and to be forthcoming to answer some demand, charge or accusation against him" and this is done by the issuance of a summons then I have no concern. But the "by-product" of this benign arrest procedure sanctioned by the majority  the actual physical custody, handcuffs, search, booking and placing in a jail cell for violating a noncriminal act is indeed disturbing. And I am not as interested in the fact that incarceration for violation of municipal ordinances has been historically approved as I am in why it has been so approved and whether it continues, under the present state of the law, to be appropriate.
Prior to 1974 the legislature specifically authorized a municipality to enact "laws ... for the preservation of the public peace and morals ... and to impose such ... penalties... as may be needed to carry the same into effect... . Provided, ... that for no one offense ... shall a fine of more than five hundred dollars be assessed, nor imprisonment for a period of time greater than sixty days." § 165.19, Fla. Stat. (1973).
Thus prior to 1974 the state expressly granted to the municipalities the power to enact "city crimes"[3] and to punish any *343 violator with incarceration. The authority to arrest for such violation as set out in section 901.15 (which was substantially the same prior to 1974) was then fully justified. During this period of time, and under the authority of section 165.19, the legislature granted many municipalities, including Orlando, charters which granted them power to incarcerate. And, because of section 165.19, it did not matter that these special laws (charters) violated article III, section 11(a)(4) of the Florida Constitution:
There shall be no special law ... pertaining to: .. . (4) punishment for crime.
However, on July 1, 1974, the legislature repealed section 165.19.[4]
All of a sudden the express statutory authorization permitting the municipality to incarcerate relied on by the supreme court in State v. Parker, 87 Fla. 181, 100 So. 260 (1924) and State v. Quigg, 154 Fla. 348, 17 So.2d 697 (1944) in justifying such ordinances, no longer existed.
The individual charters, being special acts, without the authorization conferred by general law, are now in conflict with the prohibition of punishing crime by special act. It is true that there remains vague reference in the statutes relating to the municipal criminal authority,[5] but none "expressly" grants such power to the municipality.
The only other source of such authority to the municipality would be the home rule authority conferred by the Florida Constitution. Article VIII, section 2(b) provides:
Municipalities shall have ... powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. [Emphasis added].
The supreme court in City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla. 1972), held:
Matters that because of their nature are inherently reserved for the state alone ... matters of general and statewide significance, are not proper subjects for local treatment.
The same constitution that permits through limited home rule power municipalities to enact local legislation expressly removes "punishment for crime" from its operation by prohibiting punishment of crime by local law. As the court stated in City of Miami Beach v. Forte Towers, 305 So.2d 764 (Fla. 1974), the purpose of the home rule power is to eliminate the necessity of going to the legislature to obtain a local bill. But the state could never, consistent with the constitution, authorize city incarceration by local bill in any event. Defining crime and providing for its punishment, an issue of state wide significance, should be left exclusively to the state.
Not only did the state repeal the express authority to incarcerate violators of municipal ordinances, it also decriminalized any such violation. As indicated earlier the courts have considered violations of municipal ordinances, if not criminal, at least quasi-criminal or, as stated in City of Fort Lauderdale v. King, 222 So.2d 6 (Fla. 1969), a "generic" crime. But by enacting section 775.08, Florida Statutes (1974 Supp.), the legislature defined "crime" as either a felony or misdemeanor[6] and then specifically excluded violations of municipal ordinances as misdemeanors.
Therefore, it is no longer a crime to violate a municipal ordinance. The majority says it makes no difference if the violation of a municipal ordinance is considered noncriminal, but the distinction is more than mere semantics. Amendment XIII, section 1, of the United States Constitution provides:
Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly *344 convicted, shall exist within the United States or any place subject to their jurisdiction.
The issue of incarcerating for a noncrime was before the supreme court in City of Fort Lauderdale v. King, 222 So.2d 6 (Fla. 1969). In King the court upheld municipal incarceration for violation of ordinances because:
[I]n England and in this country, where expressly authorized by statute, imprisonment may be imposed in the first instance for violations of municipal ordinances ... [Emphasis added].
King at 8.
And because the court considered the violation of a municipal ordinance a "generic crime," it rejected the reasoning of a Wisconsin decision that denied incarceration based on the civil nature of the offense.[7] But now both reasons given by the court are no longer valid. The express authority to incarcerate has been withdrawn and our legislature (and not Wisconsin's) has chosen to decriminalize violations of municipal ordinances.

STATE PREEMPTION
Even ignoring the problem of municipal power to incarcerate for violation of municipal ordinances in general, it appears that the state has preempted the punishment of traffic infractions by declaring them to be civil.
In chapter 775 the legislature defined and classified crime after determining that it would differentiate on reasonable grounds between serious and minor offenses and it would establish appropriate disposition for each.[8]It would also safeguard conduct that is without fault or legitimate state interest from being condemned as criminal.[9] It then defined crime, felony and misdemeanor,[10] and these definitions expressly excluded violation of ordinances.
In chapter 318 the legislature took up traffic matters and, with specific exceptions not here relevant, converted what had previously been misdemeanor traffic offenses into "noncriminal infractions" subject only to "civil penalties."[11] In that regard, the legislature made violations of the state uniform traffic control code (chapter 316) merely civil infractions.
Section 316.002 provides:
It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. The legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions ...
Section 316.008 provides that:
The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
* * * * * *
(h) Regulating the operation of bicycles.
These statutory enactments suggest a limited delegation of authority. It authorizes the city to supplement the uniform traffic control code by adding certain additional traffic regulations which are necessary to control particular municipal concerns and which are not inconsistent with the state scheme. It does not authorize converting the violation of the traffic code, as supplemented, into quasi-criminal conduct *345 or changing the penalty from fine only to incarceration.
There are three important features of chapter 316 as it relates to this issue.
1. It only delegates to the municipality the authority to supplement the state uniform traffic code "within the reasonable exercise of the police power." It is not a reasonable exercise of police power to incarcerate for not having a bell on a bicycle or, for that matter, to punish by incarceration that which the state has determined to be punishable only by fine.
2. While chapter 316 permits limited municipal authority to regulate traffic, it does not authorize the municipality to convert the civil nature of such traffic offenses into city crimes.
3. Chapter 316 specifically prohibits vehicles (and I would suggest that the statutory definition of "vehicle" in section 316.003(75) includes bicycles) from being equipped with any "siren, whistle or bell, except as otherwise permitted in this section".[12] While emergency vehicles and trolleys are excepted in said section, municipal bicycles are not excused from this prohibition.
I urge that the Orange County Circuit Court, sitting as an appellate court in Powers v. State, Orange County Circuit Court, Appellate Division, Case # CJAP 89-95 (September 25, 1990) was correct in holding that the bicycle ordinance in question is unconstitutional because it makes criminal an act that the state determined to be a civil infraction. It is further invalid because it requires to be done that which the state had forbidden. The state has preempted the punishment field and, in so far as it relates to bicycles, whether a bell or other warning device may be attached.

FOURTH AMENDMENT ANALYSIS
Finally, even if the municipality has the power to regulate bells on bicycles, still the Fourth Amendment right of the people to be secure in their persons against unreasonable searches and seizures must be considered.
In this regard we must assume that the bell ordinance is uniformly enforced  not only in the black, drug areas but also on junior high school playgrounds and on bike paths throughout the city. Can one reread the dialog contained in footnote 2 and believe that such arrest procedure for this offense is reasonable?
In Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) the Supreme Court held that while a person might be arrested in their home without a warrant on a "serious" charge if exigent circumstances existed, such arrest would not be permitted for a minor offense because "to allow a warrantless home entry on these facts would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction."
In the Welsh case a person suspected of drunk driving retreated into his home before the police arrived. They followed him in and arrested him in order to determine his blood alcohol level before it dissipated. The court held that since the state considered drunk driving a minor offense (a first offense of drunk driving in Wisconsin was noncriminal), it would be unreasonable at least not to obtain a warrant as required by the Fourth Amendment. There was no discussion, and none was required by the issues in the Welsh case, on the question of whether it would ever be reasonable under the strictures of the Fourth Amendment to "arrest" and take to jail a person accused of an offense which would not permit jail as part of the penalty upon conviction.
That issue did come up in Barnett v. United States, 525 A.2d 197 (D.C.App. 1987). In that case Barnett was observed in a high drug area "walking as to create a hazard," a noncriminal traffic offense. Barnett was arrested and, incident thereto, was searched. Narcotics were found and Barnett was cited for the traffic infraction and arraigned on the drug charge. The issue was the legality of Barnett's arrest for a noncriminal traffic offense and the subsequent search and seizure of the narcotics. Barnett conceded that the officer *346 had probable cause to believe that he committed the offense of "walking as to create a hazard" in the officer's presence.
The court held:
It appeared reasonable, therefore, for Willis to stop appellant, discover his name, and issue a ticket for the civil infraction. However, appellant contends, and we agree, that it was not reasonable, within the strictures of the Fourth Amendment, for Willis to effect a full custody arrest accompanied by a body search.
* * * * * *
When, as here, the authority for the search depends solely upon the legality of the arrest, if the arrest was unlawful, then, as a matter of law, the search is constitutionally prohibited.
* * * * * *
The undisputed testimony of Officer Willis leaves no doubt that appellant was arrested for violating a pedestrian traffic regulation which is a civil infraction for which only a monetary sanction may be imposed. Consequently, the arrest was invalid.
Barnett at 199.
I urge that while officers may detain persons suspected of violating noncriminal ordinances for the purpose of issuing summons, full-scale-custodial arrests with accompanying body searches are unreasonable under the Fourth Amendment. In order to preserve the constitutionality of section 901.15(1), I would construe "arrest" as it relates to violation of municipal ordinances to mean "to detain for the purpose of issuing a ticket, a summons or a notice to appear."[13]
This appears to be the general practice around the state in any event. In Heller v. City of Ocala, 564 So.2d 630 (Fla. 5th DCA 1990), appellant was "arrested" and given a notice to appear on an alleged violation of a city ordinance relating to "indecent acts." Also, in City of Coconut Creek v. Fowler, 474 So.2d 820 (Fla. 4th DCA 1985), Rev. denied, 486 So.2d 596 (Fla. 1986) Fowler was "arrested" for violating an ordinance relating to failing to admit a building official for an inspection and was issued a notice to appear. In neither case does it appear that the defendant was "taken into custody" or that a search was conducted. See also Brooks v. State, 524 So.2d 1102 (Fla. 3d DCA 1988) (search was pretextual where officer had motive not based on founded suspicion of criminal activity and detention was for traffic infraction for which an arrest would not otherwise have been made).
The evidence in this case should have been suppressed.
DAUKSCH and GRIFFIN, JJ., concur.

ON MOTION FOR REHEARING/CERTIFICATION
PER CURIAM.
We grant appellant's motion for rehearing solely for the purpose of amending the previous opinion to include the following certified questions of great public importance:
CAN A CITY ENFORCE A MUNICIPAL ORDINANCE REQUIRING THE EXISTENCE OF SAFETY EQUIPMENT ON A BICYCLE RIDDEN IN THE CITY LIMITS BY ARRESTING A PERSON WHO VIOLATES THE ORDINANCE?
DID THE REPEAL OF SECTION 165.19, FLORIDA STATUTES (1973) ELIMINATE A CITY'S PREVIOUSLY GRANTED POWER TO ENACT ORDINANCES WHICH PROHIBIT VARIOUS TYPES OF CONDUCT BY INDIVIDUALS WITHIN ITS JURISDICTION, AND WHICH PUNISHES VIOLATORS BY "CRIMINAL MEANS": ARREST; FINES; IMPRISONMENT?
*347 In all other respects, the previous opinion remains unchanged.
DAUKSCH, COBB, W. SHARP, HARRIS and GRIFFIN, JJ., concur.
GOSHORN, C.J., and COWART, PETERSON and DIAMANTIS, JJ., dissent without opinion.
NOTES
[1] See Koch v. State, 126 Wis. 470, 106 N.W. 531, 3 L.R.A. (N.S.) 1096, 5 Ann.Cas. 389 (1906); In re Sanford, 117 Kan. 750, 752, 232 P. 1053 (1925); City of Burlington v. Stockwell, 1 Kan. App. 414, 41 P. 221, 56 Kan. 208, 42 P. 826 (1895).
[2] For a discussion of federal preemption of state legislation as mandated by the supremacy clause (Art. IV, cl. 2 U.S. Const.) see, 1 Rotunda, Nowak & Young, Treatise on Constitutional Law: Substance and Procedure, § 12.1-4, (1986) and Tribe, American Constitutional Law, § 6-25 (2d Ed. 1988).
[3] Article II, section 3, Fla. Const.
[4] We are aware that the Orange County Circuit Court, sitting in a three member appellate panel, may have reached an opposite conclusion in Powers v. State, Case No. CJAP89-95 (September 25, 1990).
[1] I concur with the majority that the record does not establish a pretextual stop in this case. The defense did not attempt to show that the juvenile court was devoid of young bike riders or that housewives, out exercising on their bicycles, were not arrested, handcuffed and dragged off to jail.
[2] The following testimony is relevant:

Q. What drew your attention to Carl Thomas?
A. I observed the defendant riding a silver colored bicycle northbound and the defendant's bicycle was not equipped with a sounding device, horn, bell, as required by city code.
Q. And upon noticing Mr. Thomas was upon a bicycle that did not have the required bell or sounding device, what did you do?
A. I stopped him, obtained his name. After I obtained his name, I arrested him for the city ordinance.
Q. When you arrested the defendant, what did you do?
A. As soon as I placed the handcuffs on him, I conducted a search of his person.
Q. So when you handcuffed him, you intended to take him to jail for not having a bell on his bicycle, is that right?
A. Yes, ma'am.
Q. You were going to lock him up for that?
A. Yes, ma'am.
[3] Since municipal "criminal" ordinances prior to 1974 were authorized by statute, it might well be argued that they were misdemeanors under the definition contained in section 775.08, Florida Statutes (1973) (any crime under Florida law shall be either a felony or misdemeanor). Courts were split on whether the violation of an ordinance was a crime or something else. In Roe v. State, 96 Fla. 723, 119 So. 118 (Fla. 1928) the court held that it was not a crime sufficient to affect the credibility of the violator in a subsequent judicial proceeding. In State v. Quigg, 154 Fla. 348, 17 So.2d 697 (Fla. 1944) it was described as an "offense against municipal law" but not an offense against the state in order to avoid double jeopardy problems. However, the court in Snow v. State, 179 So.2d 99 (Fla. 3d DCA 1965) refers to a violation of an ordinance as a misdemeanor and the court in Canney v. State, 298 So.2d 495 (Fla. 2d DCA 1973) authorized the arrest for violation of a municipal ordinance as a "felony or misdemeanor" committed in the officer's presence.
[4] § 1, Chap. 74-192, Laws of Florida (1974).
[5] See, e.g., §§ 775.08, 775.082(5), 901.(15)(1) and 951.23(1)(d), Fla. Stat.
[6] § 775.08(4), Fla. Stat. (1974 Supp.) and § 775.08(2), Fla. Stat. (1974 Supp.).
[7] City of Milwaukee v. Horvath, 143 N.W.2d 446, 31 Wis.2d 490 (1966) is one such case.
[8] § 775.012(4) Fla. Stat.
[9] § 775.012(5) Fla. Stat. (1972).
[10] The legislature also defined "noncriminal violation" and somehow made an ordinance violation both not a crime and, at the same time, not a noncriminal violation. See § 775.08(3), Fla. Stat.
[11] § 318.14, Fla. Stat.
[12] § 316.271(4), Fla. Stat., (1989).
[13] It is significant that the supreme court referred to the authority to detain and cite for traffic infractions as an "arrest" in State v. Parsons, 569 So.2d 437 (Fla. 1990). We know that the "arresting officer's" authority in this regard does not permit a search but only justifies detention long enough to issue a citation. Any further detention must be based upon a reasonable suspicion supported by articulable facts. Cresswell v. State, 564 So.2d 480 (Fla. 1990).