614 So.2d 468 (1993)
Carl L. THOMAS, Petitioner,
v.
STATE of Florida, Respondent.
No. 78055.
Supreme Court of Florida.
January 7, 1993.
Rehearing Denied March 23, 1993.
*469 James B. Gibson, Public Defender, Barbara L. Condon and Michael S. Becker, Asst. Public Defenders, Daytona Beach, and Steven G. Mason of Law Offices of Steven G. Mason, Orlando, for petitioner.
Robert Butterworth, Atty. Gen. and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for respondent.
James T. Miller of Florida Ass'n Of Criminal Defense Lawyers, Jacksonville, amicus curiae for petitioner.
Dennis E. Lyles, City Atty., Robert Scott Walker, City Prosecutor, and Karen E. Black-Barron of City of Fort Lauderdale Mun. Prosecutor, Fort Lauderdale, and Kraig A. Conn, Asst. Gen. Counsel of Florida League of Cities, Inc., Tallahassee, amici curiae for respondent.
BARKETT, Chief Justice.
We have for review Thomas v. State, 583 So.2d 336 (Fla. 5th DCA 1991), in which the lower court certified two questions of great public importance:[1]
1) Can a city enforce a municipal ordinance requiring the existence of safety equipment on a bicycle ridden in the city limits by arresting a person who violates the ordinance?
2) Did the repeal of section 165.19, Florida Statutes (1973) eliminate a city's previously granted power to enact ordinances which prohibit various types of conduct by individuals within its jurisdiction, and which punishes violators by "criminal means": arrest; fines; imprisonment?
We answer the certified questions in the context of the specific factual situation presented in this case.
On the morning of June 16, 1989, an Orlando Police Department officer was patrolling a predominantly black neighborhood known for drug activity when he saw Petitioner Carl Thomas riding a bicycle that was not equipped with a bell or gong as required by city ordinance. The officer stopped Thomas and arrested him for violation of the ordinance. Incidental to the arrest, the officer searched Thomas and found a handgun in his pocket. Thomas was charged with carrying a concealed firearm in violation of section 790.01, Florida Statutes (1987).
Thomas moved to suppress the seized evidence on various grounds, including that it was the result of an illegal and warrantless search, that the ordinance was preempted by state statutes, that he could not be arrested for violation of a municipal ordinance, and that the ordinance was unconstitutional. The motion to suppress was denied. Thomas entered a plea of nolo contendere to the charge of carrying a concealed firearm and reserved the right to appeal the denial of his motion to suppress. The Fifth District Court of Appeal, en banc, affirmed the conviction and found the ordinance to be constitutional. The *470 court's decision was amended at Thomas' request to add the two certified questions.[2]
Turning to the first certified question, we note that violations of traffic offenses, except in certain situations not relevant here, are "noncriminal infractions" subject to civil penalties. §§ 318.14, 316.655, Fla. Stat. (1989). An "infraction" is defined as "a noncriminal violation which is not punishable by incarceration and for which there is no right to a trial by jury or a right to court appointed counsel." § 318.13(3), Fla. Stat. (1989).
Bicycles are regulated in chapter 316, Florida Statutes (1989), the Florida Uniform Traffic Control Law. The stated purpose of chapter 316 is to "make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities." § 316.002, Fla. Stat. This section notes that municipalities are authorized in section 316.008 to enact supplemental measures to "control certain traffic movement or parking in their respective jurisdictions." Id. Bicycles are listed in section 316.008(1)(h) as one of those subjects that municipalities are permitted to regulate on the streets and highways under their jurisdictions within the reasonable exercise of the police power. With the exception of the regulations permitted by section 316.008, local governments are specifically prohibited from passing or attempting to enforce any ordinance in conflict with the provisions of chapter 316. § 316.002, Fla. Stat. (1989).
Municipal ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute. As this Court stated in Rinzler v. Carson, 262 So.2d 661, 668 (Fla. 1972), "[a] municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden." Although municipalities and the state may legislate concurrently in areas that are not expressly preempted by the state, a municipality's concurrent legislation must not conflict with state law. City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (Fla. 3d DCA), review denied, 408 So.2d 1092 (Fla. 1981). While a municipality may provide a penalty less severe than that imposed by a state statute, an ordinance penalty may not exceed the penalty imposed by the state. Edwards v. State, 422 So.2d 84 (Fla. 2d DCA 1982).
As discussed above, the legislature in chapters 316 and 318, Florida Statutes, has determined that traffic violations, including those relating to bicycles, should be punished by civil penalties. A city may not enact an ordinance imposing criminal penalties for conduct essentially identical to that which has been decriminalized by the state. Therefore, we find that the penalty imposed by the Orlando ordinance is in conflict with state law.
In answering the specific question of whether the city may "arrest" a person for violating a bicycle bell ordinance, it is appropriate to define what is meant by "arrest." Section 901.15(1), Florida Statutes (1989), provides that "[a] law enforcement officer may arrest a person without a warrant when ... the person has violated a municipal or county ordinance in the presence of the officer."
The term "arrest" generally is defined as follows: "To deprive a person of his liberty by legal authority. Taking, under real or assumed authority, custody of another for the purpose of holding or detaining him to answer a criminal charge or civil demand." Black's Law Dictionary 109-10 (6th ed. 1990). "Arrest" has been used loosely in our cases to apply not only to situations in which the person detained is suspected of committing a crime, but also to situations in which a person is "arrested" for a noncriminal infraction. See, e.g., State v. Parsons, 569 So.2d 437 (Fla. 1990) (using the term "arrest" to apply to a situation in which an individual was stopped by the Florida Marine Patrol for a traffic violation). As Judge Harris noted in the court below, the term "arrest" as it relates to *471 violation of a municipal ordinance can be construed as meaning "to detain for the purpose of issuing a ticket, a summons or a notice to appear." Thomas, 583 So.2d at 346 (Harris, J., dissenting). Therefore, "arrest" as it is used in section 901.15(1) does not necessarily mean a full custodial arrest and incident search.
This Court has stated that while a law enforcement officer clearly is entitled to stop a vehicle for a traffic violation, the stop must last no longer than the time it takes to write the traffic citation. Cresswell v. State, 564 So.2d 480, 481 (Fla. 1990). Other courts also have noted the unreasonableness of full custody arrests for minor infractions. In Barnett v. United States, 525 A.2d 197 (D.C.Ct.App. 1987), that court held that it was unreasonable under the Fourth Amendment for police to effect a full-custody arrest accompanied by a body search after stopping an individual for violating the traffic regulation of "walking as to create a hazard."
In the case at hand, it is hardly reasonable to subject this Petitioner, who rode a bicycle without a bell, to a full custodial arrest accompanied by a body search and a potential jail sentence. We agree with the Ninth Judicial Circuit's construction of the Orlando ordinance in Powers v. State, 45 Fla. Supp.2d 31 (Fla. 9th Cir.Ct. 1990):
By making it a crime to operate a bicycle without a bell the City has made wholly innocent conduct the subject of criminal prosecution. It has provided the police with unfettered power to arrest and search citizens engaging in ordinary and customary behavior with no unlawful intent. It has created an ordinance which is susceptible to arbitrary and discriminatory enforcement... .
While the City of Orlando may have some legitimate interest in supplementing existing bicycle regulations, it cannot accomplish this goal by adversely impacting the fundamental rights and freedoms of its citizens.
Id. at 33.
We hold that when a person is charged with violating a municipal ordinance regulating conduct that is noncriminal in nature, such as in the traffic control area, section 901.15(1) only permits a person to be detained for the limited purpose of issuing a ticket, summons, or notice to appear. A full custodial arrest in such situations is unreasonable and a violation of the Fourth Amendment and article I, section 12 of the Florida Constitution.
In so holding, we are cognizant that the United States Supreme Court has upheld a search incident to a custodial arrest for a traffic violation. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). We also note that the Court in Robinson specifically declined to reach the question of whether a search would be appropriate when a police officer makes "a routine traffic stop," i.e., when the violator is issued a citation or notice to appear and is allowed to proceed. 414 U.S. at 237 n. 6, 94 S.Ct. at 477 n. 6. Because the latter scenario is all that is permitted by state traffic laws regulating bicycles, Robinson and Gustafson are not controlling.
However, we agree with the court below that the evidence obtained in the search incident to Thomas' arrest should not be suppressed. Thomas, 583 So.2d at 336. The arrest was made in reliance on the city ordinance and thus falls within the rule established in Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). The Court in DeFillippo stated that evidence obtained after a search incident to an arrest in reliance on a municipal ordinance should not be suppressed even when the ordinance is subsequently declared unconstitutional. Id. at 40, 99 S.Ct. at 2633.
Turning to the second certified question, we are handicapped by the lack of a clear statement from the legislature regarding the appropriate penalties for violation of municipal ordinances.
Section 775.08, Florida Statutes (1989), outlines classes and definitions of offenses. The terms "felony," "misdemeanor," and "noncriminal violation" are defined and the *472 appropriate penalties outlined, but the section does not classify a municipal ordinance violation, nor does it list appropriate penalties for such a violation. The section does make clear that the term misdemeanor "shall not mean a conviction for any noncriminal traffic violation of any provision of chapter 316 or any municipal or county ordinance." § 775.08(2), Fla. Stat. (1989). Similarly, the section states that the term noncriminal violation "shall not mean any conviction for any violation of any municipal or county ordinance. Nothing contained in this code shall repeal or change the penalty for a violation of any municipal or county ordinance." Id. § 775.08(3). The section goes on to state that the term "crime" shall mean a felony or a misdemeanor. Id. § 775.08(4). Thus, based on the above classifications, violation of a municipal ordinance is not a "crime," and it is not a "noncriminal violation" as defined in Florida Statutes.[3]
Before 1974, municipalities were expressly authorized by statute to impose penalties for violations of municipal ordinances, with maximum penalties set at sixty days imprisonment and a $500 fine. § 165.19, Fla. Stat. (1973). The statute was repealed by chapter 74-192, Laws of Florida. The repeal left the statutes silent regarding the appropriate penalties for violation of municipal ordinances. See Op. Att'y Gen.Fla. 089-24 (April 21, 1989); Op.Att'y Gen.Fla. 081-76 (October 13, 1981).
Article VIII, section 2(b) of the Florida Constitution provides in relevant part:
POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
Before the adoption of this provision in the 1968 constitutional revision, municipalities were creatures of legislative grace. Lake Worth Utilities Auth. v. City of Lake Worth, 468 So.2d 215, 217 (Fla. 1985). The purpose of including article VIII, section 2(b) in the revision was to give municipalities inherent power to meet municipal needs; however, the power is not absolute or supreme to that of the legislature, and the provision was not designed to make local governments omnipotent. Lake Worth Utilities Auth., 468 So.2d at 217; City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801, 804 (Fla. 1972).
Chapter 166, Florida Statutes (1989), implements article VIII, section 2(b) by permitting municipalities to exercise any power for municipal purposes except when expressly prohibited by law. City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764, 766 (Fla. 1974). Section 166.021(3)(c) expressly excludes from municipalities' powers "any subject expressly preempted to state or county government by the constitution or by general law."
Although this Court found in Jaramillo v. City of Homestead, 322 So.2d 496 (Fla. 1975), that a municipality may enact ordinances adopting by reference the criminal or penal statutes of the state, the question of imposing criminal penalties for violation of municipal ordinances has not been directly presented to this Court since the repeal of section 165.19. The Attorney General, who has been presented with the question on several occasions, has opined that municipalities, pursuant to the home rule powers found in article VIII, section 2(b) and in chapter 166, Florida Statutes, possess the power to prescribe penalties for violations of their ordinances. See Op. *473 Att'y Gen. 081-76 (October 13, 1981); Op. Att'y Gen. 089-24 (April 21, 1989). Both opinions have also stated that limitations on penalties in chapters 316 and 318 and in sections 775.082 and 775.083, Florida Statutes, should serve as guidelines for any penalties imposed for violation of municipal ordinances.
We agree with the Attorney General to the extent that his opinions express the view that municipal ordinance penalties may not exceed state penalties for similar or identical offenses. In the case at hand, as noted earlier, this means that the city may not punish by criminal penalties conduct that the state has decriminalized. We decline to further answer the second certified question in the hope that the legislature will clarify what types of penalties it intended to allow municipalities to impose for municipal ordinance violations.
For the foregoing reasons, we approve the decision below but disapprove the court's reasoning.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] This Court permitted amici to join both parties: the Florida Association of Criminal Defense Lawyers filed a brief supporting Thomas' position, while the City of Fort Lauderdale and the Florida League of Cities filed briefs supporting the State's position.
[3] Chapter 162, Florida Statutes (1989), relating to county and municipal code enforcement, provides for fines and other noncriminal penalties for enforcement of ordinances. The chapter explicitly states, however, that its provisions are supplemental and are not designed to prohibit a county or municipality from enforcing its codes or ordinances by other means. See §§ 162.13, 162.21(8), Fla. Stat. (1989). Chapter 162, therefore, does not provide guidance on the appropriate penalties for violation of a municipal ordinance. Similarly, section 775.082(5), Florida Statutes (1989), relating to penalties, is not helpful. It provides that "[a]ny person who has been convicted of a noncriminal violation may not be sentenced to a term of imprisonment nor to any other punishment more severe than a fine, forfeiture, or other civil penalty, except as provided in chapter 316 or by ordinance of any city or county." (Emphasis supplied.)