PARIENTE, J.,
dissenting.
I dissent because I conclude that, prior to 2010, the Legislature did not expressly preempt the use of red light cameras to the state. In fact, through the Florida Uniform Traffic Control Law, the Legislature actually authorized municipalities to enact municipal ordinances utilizing red light cameras to regulate traffic -within their municipal boundaries. Further, these ordinances were not impliedly preempted by, or in conflict with, state law, as the ordinances did not affect the continued enforcement of the Florida Uniform Traffic Control Law and did not allow for the imposition of a municipal citation when a motorist received a red light infraction citation pursuant to state law.
Not until 2010 did the Legislature make clear through an express statement in the Mark Wandall Traffic Safety Act that “Regulation of the use of cameras for enforcing the provisions of this chapter is expressly preempted to the state.”[1] Mark Wandall Traffic Safety Act, ch.2010-80, § 3, Laws of Fla. This new law authorized municipal governments to use cameras to enforce red light violations under the Florida Uniform Traffic Control Law and set forth a uniform system of procedures and fines for municipalities to follow when utilizing these cameras. See id.
*499 Prior to the passage of that Act, however, the Legislature had already granted municipalities such as Orlando and Aven-tura the power to enact red light ordinances pursuant to the powers expressly granted to municipal governments through section 316.008, Florida Statutes (2008), entitled “Powers of local authorities.” These powers, which included the authority to “[r]egulat[e], restrict[ ], or monitor[ ] traffic by security devices or personnel on public streets and highways,” § 316.008(l)(w), Fla. Stat. (2008), clearly authorized municipal governments to enact the local legislation at issue here.
The majority’s holding unnecessarily broadens this Court’s interpretation of legislative preemption, while, at the same time, limiting the home rule authority granted to municipal governments by the Florida Constitution. I would quash the decision of the Fifth District Court of Appeal in City of Orlando v. Udowychenko, 98 So.3d 589 (Fla. 5th DCA 2012), adopt the well-reasoned opinion of the Third District Court of Appeal in City of Aventura v. Masone, 89 So.3d 233 (Fla. 3d DCA 2011), and hold that the red light camera ordinances enacted by the cities of Orlando and Aventura prior to 2010 were proper exercises of their municipal home rule authority.
The subject of this decision is a high profile and controversial one — the use of red light cameras by municipal governments to detect and sanction drivers that run red lights within their municipal boundaries as a complementary law enforcement tool to the mechanisms set forth in the Florida Uniform Traffic Control Law. Although this subject is of interest to many Floridians, the wisdom and public policy questions regarding the use of red light cameras are not before this Court, nor are any potential constitutional issues that may be implicated through the use of these cameras. Instead, the only issue in this case is the purely legal question of whether municipalities were authorized to enact red light camera ordinances, which imposed municipal fines on drivers for conduct already covered by the Florida Uniform Traffic Control Law, prior to 2010, pursuant to their home rule authority.
The Florida Uniform Traffic Control Law provides a statutory framework that generally prohibits municipal governments from enacting local ordinances concerning topics already addressed by the Florida Uniform Traffic Control Law. However, the Florida Uniform Traffic Control Law also expressly authorizes municipalities to legislate within certain enumerated areas. In fact, as recognized by the majority,' section 316.002, Florida Statutes, explicitly states that
[t]he Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions: This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith.
§ 316.002, Fla. Stat. (2008).
Included within section 316.008 is subsection (l)(w), which grants municipal governments the power to “[r]egulat[e], restrict[], or monitor[] traffic by security devices or personnel on public streets and highways, whether by public or private parties and provid[e] for the construction and maintenance of such streets and highways.” § 316.008(l)(w), Fla. Stat. While the majority concludes that the municipal ordinances at issue here are not expressly authorized by this subsection, my review of *500 chapter 316 and our precedent does not support the majority’s interpretation. Rather than attempt to harmonize the ordinances in a way that does not conflict with the statutory scheme, the majority reads this authorizing section too narrowly-
When sections 316.002 and 316.008 are examined together, “the plain text of the Uniform Traffic Control Law expressly confers authority to a municipal government to regulate traffic within its municipal boundaries as a reasonable exercise of its police power where such regulation does not conflict, but supplements the laws found therein.” City of Aventura, 89 So.3d at 236. In my view, the use of red light cameras by municipalities to enforce red light infractions within their municipal boundaries is a regulation that falls squarely within the authority granted to municipal governments through section 316.008(l)(w). As articulated by the Third District, “[t]he City, via image capture technologies, monitors intersections it has determined to be of particular concern for traffic accidents, and regulates and restricts red light infractions at those intersections through the issuance of its notices of violation.” Id. at 239.
I agree with the reasoning of the Third District, which explained that “[s]ection 316.008 allows the local authorities to use their home rule powers to effectuate certain restrictions and regulations but does not specify the means or the schemes for implementing such restrictions or regulations.” Id. at 240. By creating a system through which to impose penalties on drivers for running red lights, “the City has simply developed a procedure for carrying out its power to regulate, restrict or monitor traffic.” Id.
Conversely, the majority concludes that section 316.008(l)(w) does not expressly authorize the municipal ordinances in this case because “ ‘[r]egulating, restricting, or monitoring traffic by security devices’ does not ... explicitly provide authority for local governments to adopt measures for the punishment of conduct that is already subject to punishment under the framework established by chapters 316 and 318.” Majority op. at 497 (quoting § 316.008(l)(w), Fla. Stat.). However, contrary to the majority’s interpretation, this Court has previously interpreted the word “regulate,” as found within the same section of the Florida Uniform Traffic Control Law, to encompass the power to impose punishment for the violation of municipal regulations within an area already addressed by the state.
In Thomas v. State, 614 So.2d 468, 470 (Fla.1993), this Court reviewed a municipal ordinance enacted pursuant to section 316.008(l)(h), which granted the municipality the power to “[r]egulat[e] the operation of bicycles,” an area already covered by chapter 316. § 316.008(l)(h), Fla. Stat. (1989). Despite the fact that the Florida Uniform Traffic Control Law already regulated the operation of bicycles, this Court concluded that, pursuant to the authority granted in section 316.008(l)(h), a municipal government had the power to enact an ordinance that imposed noncriminal penalties for violations of conduct within an area already regulated by the Florida Uniform Traffic Control Law, as long as the penalties imposed by the municipal ordinance did “not exceed the penalty imposed by the state.” Thomas, 614 So.2d at 470. By concluding in Thomas that municipal governments had the power to impose penalties pursuant to section 316.008(l)(h), this Court interpreted the word “regulate” in the Florida Uniform Traffic Control Law to encompass the power to impose fines for violations of municipal regulations within an area covered by chapter 316.
*501 Based on an overly narrow reading of Thomas, the majority attempts to distinguish Thomas from this case on the basis that there was no existing state statute regulating the precise conduct addressed by the municipal ordinance — as is the case here. However, in Thomas, the absence of specific state regulation was inconsequential. In determining that the municipal government could impose non-criminal penalties for violations of conduct within an area covered by chapter 316, the Court did not rely on the absence of state regulation, but looked solely to whether the regulated conduct fell within one of the areas enumerated in section 316.008, within which municipalities are expressly authorized to act. See id. Here, just as in Thomas, the regulation undertaken by the municipalities falls within an area enumerated in section 316.008. Id. Therefore, just as in Thomas, the municipal governments had the power to impose non-criminal penalties for violations of these regulations.
Although the majority states that its decision is premised solely upon express preemption, its reliance upon the fact that the municipalities created enforcement regimes different thán those provided by state law seems to implicate conflict preemption — essentially concluding that the ordinances are invalid because they conflict with section 316.075(4), Florida Statutes, which states that red light violations are “punishable pursuant to chapter 318,” § 316.075(4), Fla.' Stat. (2008), as well as section 318.121, Florida Statutes, which states that “[notwithstanding any general or special law, or municipal or county ordinance, additional fees, fines, surcharges, or costs other than the court costs and surcharges assessed under s. 318.18(11), (13), and (18) may not be added to the civil traffic penalties assessed in this chapter.” § 318.121, Fla. Stat. (2008). In addressing conflict preemption, the majority states that this concept “comes into play “where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute.’ ” Majority op. at 495 (quoting City of Palm Bay v. Wells Fargo Bank, N.A., 114 So.3d 924, 928 (Fla.2013)).
This standard, which originates from McQuillin’s The Law of Municipal Corporations, a general treatise on the law of municipalities, is broader than the conflict standard previously followed by this Court. See 5 McQuillin Mun. Corp. § 15:16 (3d ed. 2012). As articulated by this Court in Sarasota Alliance For Fair Elections, Inc. v. Browning, the “test of conflict between a local government enactment and state law is ‘whether one must -violate one provision in order to comply with the other. Putting it another way, a conflict exists when two legislative enactments cannot coexist.’ ” 28 So.3d 880, 888 (Fla.2010) (quoting Laborers’ Int’l Union of N. Am., Local 478 v. Burroughs, 541 So.2d 1160, 1161 (Fla.1989)).
Nonetheless, even applying the broader standard for conflict preemption recently adopted by this Court in Palm Bay, a decision from which I also dissented, the municipal ordinances in this case still do not conflict with section 316.075(4), which states that red light violations are “punishable pursuant to chapter 318.” § 316.075(4), Fla. Stat. The plain text of the Florida Uniform Traffic Control Law expressly confers authority to a municipal government to regulate traffic within its municipal boundaries where such regulation “does not conflict, but supplements the laws found therein.” City of Aventura, 89 So.3d at 236; see § 316.002, Fla. Stat. (“Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or *502 ordinances of this chapter and not in conflict therewith.”). Here, the enforcement mechanisms codified through the city ordinances are completely consistent with and supplemental to those found within the Florida Uniform Traffic Control Law.
While I do not dispute that those red light violations prosecuted under the Florida Uniform Traffic Control Law must be punished “pursuant to chapter 818,”' as required by section 316.075, red light violations punished through the municipalities’ code enforcement mechanisms are not subject to this same requirement. That is because these municipal ordinances exist independently of the Florida Uniform Traffic Control Law and represent supplemental enforcement mechanisms that have been expressly authorized by the Florida Uniform Traffic Control Law pursuant to section 316.008(l)(w). Simply because the ordinances regulate conduct that is also covered by the Florida Uniform Traffic Control Law does not automatically mean that the municipal ordinances “irreconcilably conflict[ ] with or stand[ ] as an obstacle to the execution of the full purposes of the statute.” Majority op. at 495 (quoting City of Palm Bay, 114 So.3d at 928).
In fact, it is clear that the two enforcement mechanisms can exist concurrently, as enforcing traffic violations under the municipal ordinances “does not prohibit law enforcement officers from issuing a citation in accordance with the Uniform Traffic Control Law,” or in any way stand as an obstacle to the Florida Uniform Traffic Control Law. City of Aventura, 89 So.3d at 238. Indeed, as stated by the Third District, the “[ordinance supplements law enforcement personnel in the enforcement of red light infractions, by issuing a notice of violation under the City’s Code of Ordinances, deemed a noncriminal, non-moving violation, for which a civil penalty shall be assessed.” Id.
Additionally, it is equally apparent that municipal citations cannot be issued pursuant to the municipal ordinances for red light infractions for which a motorist receives a citation pursuant to the Florida Uniform Traffic Control Law. For example, the City of Aventura’s ordinance specifically states that the ordinance does not apply to emergency vehicles or vehicles involved in collisions, and then also states “nor shall a notice be issued in any case where the operator of the vehicle was issued a citation for violating the state statute regarding the failure to stop at a red light indication for the same event or incident.” Aventura, Fla., City Code, ch. 48, art. 3, § 48-38 (2007).
Thus, each regulatory system represents an independent mechanism to prevent red light violations, neither of which is implicated when the other is utilized. Because this Court has previously stated that “a conflict exists when two legislative enactments cannot co-exist,” Browning, 28 So.3d at 888 (quoting Burroughs, 541 So.2d at 1161), it is clear, in my opinion, that these two legislative enactments do not impermissibly conflict, as the municipal ordinances do not “supersede, infringe, curtail or impinge upon state or county laws” and are able to coexist alongside the Florida Uniform Traffic Control Law. City of Aventura, 89 So.3d at 238 (quoting Aventura, Fla., City Code, ch. 48, art. 3, § 48-26 (2007)).
Further, the municipal ordinances- also do not conflict with section 318.121, which states ' that “additional fees, fines, surcharges, or costs ... may not be added to the civil traffic penalties assessed in this chapter.” Section 318.121 expressly preempts municipalities from undertaking very specific conduct — adding additional fines or costs on top of those assessed under chapter 318. For example, pursuant to section 318.121, a municipal gov *503 ernment could not authorize a law enforcement officer to impose an additional municipal fine when issuing a traffic citation pursuant to the Florida Uniform Traffic Control Law for the same infraction. Similarly, a municipal government could not enact a local ordinance that imposes additional court costs or fees on top of those that are allowed under chapter B18 when adjudicating traffic citations issued pursuant to the Florida Uniform Traffic Control Law.
In this case, the municipal ordinances do not “add[] to the civil traffic penalties assessed” pursuant to chapter 318. § 318.121, Fla. Stat. Instead, the ordinances impose different fines, for the violation of separate municipal ordinances that exist alongside the Florida Uniform Traffic Control Law. Accordingly, the fines imposed by the municipal ordinances are not “additional” to the fines found in chapter 318, and section 318.121 is not in conflict with municipal ordinances that assess penalties independent of those found within chapter 318.
Finally, the majority has, in my view, failed to take into account the breadth of the home rule authority granted to municipalities by both the Florida Constitution and by statute. In 1973, in order to clarify the breadth of the authority granted to municipalities in Florida, the Legislature enacted the Municipal Home Rule Powers Act, which was codified to “secure for municipalities the broad exercise of home rule powers granted by the constitution” and to “remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited.” § 166.021(4), Fla. Stat. (2008). This Act made clear that the Florida Legislature intended for municipal governments to have the power to enact local legislation on the same subjects and to the same extent as the state government, except in narrow circumstances where the Legislature has preempted a specific area of law to the state or where the local law conflicts with state law.
Allowing municipalities to enact local traffic ordinances where they are “in a unique position to identify dangerous intersections within [their] boundaries and implement additional safeguards to prevent accidents at such intersections,” is consistent with the purposes underlying Florida’s decision to grant municipal governments extensive powers of self-governance. City of Aventura, 89 So.3d at 237. Therefore, I cannot agree with the majority that section 316.008(l)(w), which expressly authorizes municipalities to “[r]eg-ulat[e], restrict[ ], or monitor[ ] traffic by security devices or personnel on public streets and highways, whether by public or private parties,” in a manner consistent with their broad home rule authority, did not expressly authorize municipal governments to use red light cameras to enforce red light infractions within their municipal boundaries, prior to the enactment of the Mark Wandall Traffic Safety Act in 2010.
For all these reasons, I respectfully dissent from the majority opinion. I would, instead, adopt the opinion of the Third District in City of Aventura, 89 So.3d 233, and conclude that the ordinances enacted by the cities of Orlando and Aventura were proper exercises of the municipal governments’ home rule authority.
QUINCE, J., concurs.