*494 CANADY, J.
In these consolidated cases, we consider whether municipal ordinances imposing penalties for red light violations detected by devices using cameras were invalid because they were preempted by state law. At issue in these cases is the operation of ordinances prior to July 1, 2010, the effective date of the Mark Wandall Traffic Safety Act, ch.2010-80, Laws of Fla., which authorized — subject to statutory requirements — the use of red light traffic infraction detectors by local governments and the Florida Department of Highway Safety and Motor Vehicles.
In City of Aventura v. Masone, 89 So.3d 233, 234 (Fla. 3d DCA 2011), the Third District Court of Appeal held that Aventu-ra’s ordinance was a valid exercise of municipal power under section 316.008(l)(w), Florida Statutes (2008), which specifically grants “local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power,” authority for “[rjegulat-ing, restricting, or monitoring traffic by security devices or personnel on public streets and highways.” The Fifth District Court of Appeal reached a contrary conclusion in City of Orlando v. Udowychenko, 98 So.3d 589, 591 (Fla. 5th DCA 2012), holding that Orlando’s ordinance was invalid because it was in conflict with state law and was both expressly and impliedly preempted by state law. The Fifth District ruled that the imposition of penalties other than those specifically provided for by state statute “for running a red light in a particular municipality does not fall within the specific authority of section 316.008(l)(w)[,]” Florida Statutes (2008), which the court concluded “appears to contemplate only unique situations for which a statewide law is lacking or is inadequate.” Id. at 599. The Fifth District certified conflict with the decision in City of Aven-tura. Id.
The losing party in each of these cases sought review, and we determined to exercise our jurisdiction. See art. V, § 3(b)(3)-(4), Fla. Const. For the reasons we explain, we agree with the Fifth District and conclude that the ordinances are not valid.
I.
In arguing that the respective ordinances are valid, both Aventura and Orlando rely on the specific power provided to local authorities by section 316.008(l)(w) for “[rjegulating, restricting, or monitoring traffic by security devices.” Udowychenko and Masone, who challenged the validity of the ordinances in order to set aside fines imposed under the ordinances, contend that section 316.008(l)(w) does not authorize the municipal enforcement regime adopted by the ordinances, an enforcement regime that they contend is at odds in multiple ways with the enforcement regime adopted by state law.
As is clear from the arguments presented by the parties, the crux of these consolidated cases is whether section 316.008(l)(w) provides authority for the ordinances. In explaining our conclusion that the ordinances are not justified by this statutory provision, we will first briefly discuss the general relationship between state law and municipal ordinances. We will then review the statutory framework — found in chapters 316 and 318, Florida Statutes — relating to traffic control and the disposition of traffic infractions, as well as the basic regime established by the ordinances.
II.
A.
“In Florida, a municipality is given broad authority to enact ordinances *495 under its municipal home rulé powers.” City of Hollywood v. Mulligan, 934 So.2d 1238, 1243 (Fla.2006). But municipal ordinances must yield to state statutes. Article VIII, section 2(b), Florida Constitution, specifically recognizes the power of municipalities “to conduct municipal government, perform municipal functions and render municipal services,” and it specifically recognizes that municipalities “may exercise any power for municipal purposes except as otherwise provided by law.” (Emphasis added.) See also § 166.021, Fla. Stat. (2008) (relating to the exercise of municipal powers). “The critical phrase of article VIII, section 2(b) — ‘except as otherwise provided by law[1] — establishes the constitutional superiority of the Legislature’s power over municipal power.” City of Palm Bay v. Wells Fargo Bank, N.A., 114 So.3d 924, 928 (Fla.2013).
Preemption of local ordinances by state law may, of course, be accomplished by express preemption — that is, by a statutory provision stating that a particular subject is preempted by state law or that local ordinances on a particular subject are precluded. Preemption by state law, however, “need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject.” Barragan v. City of Miami, 545 So.2d 252, 254 (Fla.1989). “Implied preemption is found where the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme.” Sarasota Alliance for Fair Elections, Inc. v. Browning, 28 So.3d 880, 886 (Fla.2010). Even “where concurrent state and municipal regulation is permitted because the state has not preemptively occupied a regulatory field, ‘a municipality’s concurrent legislation must not conflict with state law.’ ” City of Palm Bay, 114 So.3d at 928 (quoting Thomas v. State, 614 So.2d 468, 470 (Fla.1993)). “Such ‘conflict preemption’ comes into play “where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute.’ ” Id. (quoting 5 McQuillin Mun. Corp. § 15:16 (3d ed. 2012)).
B.
Chapter 316, Florida Statutes (2008), the Florida Uniform Traffic Control Law, contains a detailed code regulating traffic throughout the state. Chapter 316 contains two broad preemption provisions. The first provision, which both states a legislative purpose of uniformity and recognizes the need for municipalities to “control certain traffic movement or parking in their respective jurisdictions,” is found in section 316.002:
It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. The Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter.
(Emphasis added.)
The second preemption provision is found in section 316.007, which provides in pertinent part: “The provisions of this *496 chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.” (Emphasis added.)
As indicated in section 316.002, section 316.008 contains an enumeration of specific powers that local authorities may exercise to control traffic movement or parking in their respective jurisdictions “within the reasonable exercise of the police power.” Section 316.008(l)(w) — the crucial provision at issue here — provides that local authorities are not precluded from “[rjegu-lating, restricting, or monitoring traffic by security devices or personnel on public streets and highways, whether by public or private parties and providing for the construction and maintenance of such streets and highways.” (Emphasis added.)
Chapter 316, of course, regulates red light violations. Section 316.075 contains detailed rules governing the conduct of drivers and pedestrians relating to traffic control signal devices. Among these rules is the general requirement that “[vjehicu-lar traffic facing a steady red signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until a green indication is shown.” § 316.075(l)(c)l., Fla. Stat. (2008). Any violation of the rules in section 316.075 relating to traffic control signal devices “is a noncriminal traffic infraction, punishable pursuant to chapter 318.” § 316.075(4), Fla. Stat. (2008).
Chapter 318, Florida Statutes (2008), the Florida Uniform Disposition of Traffic Infractions Act, states that its purpose is to facilitate “the implementation of a more uniform and expeditious system for the disposition of traffic infractions.” § 318.12, Fla. Stat. (2008). The chapter sets forth detailed requirements governing the handling of traffic infractions, including rules governing the proceedings for the adjudication of infractions, section 318.14; the amount of penalties, section 318.18; and the disposition of civil penalties, section 318.21. Chapter 318 also contains a preemption provision regarding fines and other charges, which is set forth in section 318.121: “Notwithstanding any general or special law, or municipal or county ordinance, additional fees, fines, surcharges, or costs other than the court costs and surcharges assessed under s. 318.18(11), (13), and (18) may not be added to the civil traffic penalties assessed in this chapter.” (Emphasis added.)
C.
The Fifth District described Orlando’s ordinance as follows: “According to the ordinance, if a vehicle is videotaped running a red light, an infraction is issued to the owner, wherein the owner is required to pay the fine for the infraction or file an appeal. If timely appealed, a hearing is set.” City of Orlando, 98 So.3d at 591. Infractions are issued to a vehicle’s owner “[u]pon a code enforcement officer viewing the video and confirming ownership of the vehicle.” Id. The process under Aventura’s ordinance is not materially different. See City of Aventura, 89 So.3d at 238-39. Each of the ordinances creates a municipal code enforcement system for the disposition of red light violations that is entirely separate from the enforcement system established under chapters 316 and 318. See City of Orlando, 98 So.3d at 592-93; City of Aventura, 89 So.3d at 240.
III.
Chapter 316 could not be clearer in providing that local ordinances on “a matter covered by” the chapter are preempted unless an ordinance is “expressly author *497 ized” by the statute. § 316.007, Fla. Stat. (2008). It is undisputed that the Orlando and Aventura ordinances — in providing for the punishment of red light violations— relate to matters “covered by” chapter 316. The ordinances consequently can be sustained as a valid exercise of municipal authority only if they are — as the express preemption provision of section 316.007 requires — expressly authorized by statute. Orlando and Aventura only point to section 316.008(l)(w) as the source of such an express authorization. That provision, however, is not equal to the task.
The Orlando and Aventura ordinances establish a regime for the punishment of red light violations that is distinct from the statutory regime for the punishment of such violations. Section 316.008(l)(w)’s grant of authority for “[r]egulating, restricting, or monitoring traffic by security devices” does not, however, explicitly provide authority for local governments to adopt measures for the punishment of conduct that is already subject to punishment under the framework established by chapters 316 and 318. As broadly described in section 316.002, the powers granted to municipalities by section 316.008 are powers by which “municipalities may control certain traffic movement or parking in their respective jurisdictions.” “Control[ling] certain traffic movement” through “[rjegulating, restricting, or monitoring traffic by security devices” does not specifically encompass undertaking enforcement measures — that is, imposing punishment — outside the framework established by chapters 316 and 318 for conduct that is proscribed by chapter 316 and subject to punishment under chapter 318. Certain provisions of section 316.008 do grant express authority to local authorities to adopt additional measures with respect to the punishment of violations. See §§ 316.008(4), 316.008(5), Fla. Stat. (2008). But section 316.008(l)(w) is silent with respect to the punishment of violations.
Contrary to the dissent, our decision in Thomas v. State, 614 So.2d 468 (Fla.1993), does not support the reliance of Orlando and Aventura on section 316.008(l)(w) to escape the sweep of the express preemption provisions of chapter 316 and chapter 318. Thomas dealt with a local ordinance adopted under the authority granted to local governments by section 316.008(l)(h) for “[rjegulating the operation of bicycles.” Id. at 469-70. The ordinance, which imposed criminal penalties for violations, required bicycles to be equipped with a bell or gong. Id. at 469. No similar requirement regulating bicycles was contained in chapter 316. The ordinance at issue in Thomas — unlike the ordinances at issue here — regulated specific conduct that was not subject to statutory regulation. Thomas thus dealt with an ordinance on specific matters not “covered by” chapter 316. § 316.007, Fla. Stat.
The question at issue in Thomas was the validity of a search incident to an arrest for a violation of the ordinance. In determining that a custodial arrest for an ordinance violation was invalid, the Court held that the criminal penalty imposed by the ordinance was “in conflict with state law” because the Legislature had “determined that traffic violations, including those relating to bicycles, should be punished by civil penalties.” Id. at 470. Beyond its conclusion “that the city may not punish by criminal penalties conduct that the state has decriminalized,” the Court declined to address “what types of penalties [the Legislature] intended to allow municipalities to impose for municipal ordinance violations.” Id. at 473. Thomas does contain the statement that “[w]hile a municipality may provide a penalty less severe than that imposed by a state statute, an ordinance penalty may not exceed the pen *498 alty imposed by the state.” Id. at 470. But that statement is in the context of the Court’s general discussion of municipal authority to “legislate concurrently in areas that are not expressly preempted by the State.” Id. It has no application where express preemption is operative. The reasoning of Thomas, therefore, does not support the conclusion that section 316.008(1) grants local governments the authority to establish code enforcement regimes for the punishment of specific conduct that is already proscribed and subject to punishment under state law.
The prohibition and punishment of red light violations are matters “covered by” chapter 316, and section 316.008(l)(w) does not “expressly authorize[ ]” local ordinances on those matters. § 316.007, Fla. Stat. (2008). The Orlando and Aventura ordinances therefore are expressly preempted by state law. Nothing in section 316.008(l)(w) provides that municipalities are granted the authority to enact an enforcement regime different from the enforcement regime applicable under the provision of section 316.075(4) that red light violations are “punishable pursuant to chapter 318.” And nothing in section 316.008(l)(w) creates an exception from the express preemption imposed by section 318.121 of any fines other than the penalties imposed as provided in chapter 318.
IY.
The Orlando and Aventura ordinances are invalid because • they are expressly preempted by state law. We therefore quash the decision of the Third District in City of Aventura and approve the decision of the Fifth District in City of Orlando.
It is so ordered.
POLSTON, C.J., and LEWIS, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.

. Despite this subsequent express legislative statement of preemption, the issue in this case, involving ordinances passed prior to 2010, is by no means moot, particularly given the significant amounts of money that were collected by the cities of Orlando and Aventu-ra pursuant to their then-existing municipal ordinances — which the majority has decided must now be returned to the individuals who violated these ordinances.