BILBREY, J.
This is an appeal from the trial court’s denial of Appellant, Classy Cycles, Inc.’s, motion for summary judgment and resulting final judgment, which denied Appellant’s challenges to portions of the City of Panama City Beach and Bay County’s (collectively “the local governments”) ordinances related to the rental of certain motor vehicles. Finding that local governments’ ability to legislate in this area has been preempted by Florida law, we reverse the trial court’s order and judgment, and remand for further proceedings.

The Local Governments

Bay County is a non-charter county and therefore has the “power of self-government as is provided by general or special law.” Art. YIII, § 1(f), Fla. Const.[1] The Florida Constitution further provides:
The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict.
Id.; see also § 126.01(1), Fla. Stat. (2014).
The City of Panama City Beach is a municipality established by Florida law. Panama City Beach Charter, Art. 1, § 1-1. As such, the Florida Constitution provides that:
Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and *782 render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
Art. VIII, § 2(b), Fla. Const.; see also § 166.021(1), Fla. Stat. (2014).
The powers granted to non-charter counties and municipalities therefore differ, with Panama City Beach having greater power to enact ordinances than Bay County. Because of the doctrine of preemption as discussed below, however, the difference in the power to enact ordinances between municipalities and non-charter counties is immaterial to our decision.

The Ordinances

Bay County Ordinance 14-12 amended section 24-91 (a) of the Bay County Code, which now provides:
It shall be unlawful for any person to rent, lease or hire within the county a motorcycle, motorscooter, moped or any other two- or three-wheeled, self-propelled vehicle, or solicit the same within the county, unless each of the following requirements is met:
[[Image here]]
(3) For each motor scooter all occupants are outfitted with a fluorescent green highway safety vest meeting at a minimum Class 2 ANSI 107-2010 or equivalent revised standard^, upon the back of .which the word “RENTAL” is applied in black, block letters four inches high, and the occupants are not allowed to leave the rental business on the vehicle unless wearing the vest in a normal fashion.
The Bay County Code also makes it unlawful to operate any of the listed rented vehicles without wearing the required vest, § 24-91(d).
Bay County Ordinance 14-07 created section 24-97 of the Bay County Code. That section of code provides in pertinent part that each business renting, leasing, or hiring within the unincorporated area of Bay County & motorcycle, motor scooter, moped, or any other two- or three-wheeled, self-propelled vehicle, shall obtain the following minimum coverage:
Commercial general liability, with minimum limits of liability with no restrictive endorsements: $1,000,000.00 each occurrence, $1,000,000.00 general aggregate, $1,000,000.00 personal injury, and $1,000,000.00 products or completed operations [and].
Commercial auto liability coverage with minimum limits of $500,000.00 to include bodily injury and property damages arising out of ownership, maintenance or use of the moped/scooters.[2 ]
The Bay County Code also provides that it is a criminal offense, punishable as. a second degree misdemeanor, to not comply with vest and insurance provisions. § 24-99.2.
Panama City Beach Municipal Ordinance 1337, Art, VI § 22-100(a), provides:
It shall be unlawful for any person to rent, lease or hire within the City a motorcycle, motor scooter or any other two- or three-wheeled, self-propelled vehicle, or solicit the same within the City, unless each of the following requirements is met:
[[Image here]]
(4) For each motor scooter rented, all occupants are outfitted with a fluorescent green highway safety vest meeting *783 at a minimum Class 2 ANSI 107-2010 or equivalent revised standards, upon -the back of which the word “RENTAL” is applied in black, block letters four inches (4") high, and the occupants are not allowed to leave the rental business on-the vehicle unless wearing the vest in a normal fashion.
The Panama City Beach Code also makes it unlawful to operate the rented vehicle without wearing the required vest. § 22-100(d).
Panama City Beach Municipal Ordinance 1387, Chapter 22, Art. VI § 22-100(a)10, provides:
(a) It shall be unlawful for any person to rent, lease or hire within the City a motorcycle, motor scooter, moped or any other two- or three-wheeled, self-propelled vehicle, or solicit the same within the City, unless each of the following requirements is met:
[[Image here]]
(10) The entity owning and renting a motorcycle or motor scooter shall have provided and have in effect a policy of insurance ... insuring the owner and operator of such rented scooter against loss from liability for bodily injury, death, and property damages ,.. [i]n the amount of $10,000 because of bodily injury to, or death of, one person in any one crash; and [sjubject to such limits for one person, in the amount of $20,000 because of bodily injury to, or death of, two or more persons in any one crash; and [i]n the amount of $10,000 because of injury to, or destruction of, property of other in any one crash.
The Panama City Beach Code also provides that it is a civil infraction, punishable by a civil penalty, to not comply with vest and insurance provisions. § 22-105.5.[3]

The Proceedings Below and this Appeal

When the litigation commenced, Appellant operated several businesses in Bay County and Panama City Beach, which rented motor vehicles subject to the vest and insurance ordinances of the local governments. Appellant sought a declaratory judgment declaring the ordinances exceeded the scope of the authority of the local governments. Appellant also sought damages for lost revenue because, it alleged, its motor scooter rental businesses could not fully operate because the required insurance could not be obtained., All parties moved for summary judgment arguing no disputed material facts existed. The trial court granted summary judgment in favor of the local governments and then entered a final judgment consistent with the summary judgment.
• Here Appellant challenges the trial court’s decision finding the local governments’ ordinances concerning vest and insurance requirements to be a valid exercise of local authority. Appellant argues, as it did below, that the regulation of motor vehicles by local governments is preempted by Florida law, except as specifically allowed, and that none of the exceptions are applicable to the ordinances here.

Preemption

The Florida Supreme Court has stated: “A local government enactment may be inconsistent with state law if (1) the Legislature ‘has preempted a particular subject area’ or (2) the local enactment conflicts with a state statute.” Sarasota Alliance For Fair Elections, Inc. v. Browning, 28 So.3d 880, 886 (Fla.2010), citing Lowe v. *784 Broward County, 766 So.2d 1199, 1206-07 (Fla. 4th DCA 2000).[4] The Court in Sarasota Alliance went on to explain the preemption doctrine as follows:
Florida law recognizes two types of preemption: express and implied. Express preemption requires a specific legislative statement; it cannot be implied or inferred. See City of Hollywood v. Mulligan, 934 So.2d 1238, 1243 (Fla.2006); Phantom of Clearwater, Inc. v. Pinellas County, 894 So.2d 1011, 1018 (Fla. 2d DCA 2005), approved in Phantom of Brevard, Inc. v. Brevard County, 3 So.3d 309 (Fla.2008). Express preemption of a field by the Legislature must be accomplished by clear language stating that intent. Mulligan, 934 So.2d at 1243. In cases where the Legislature expressly or specifically preempts an area, there is no problem with ascertaining what the Legislature intended. Tallahassee Mem’l [v. Tallahassee Med. Ctr., 681 So.2d 826, 831 (Fla. 1st DCA 1996) ].
28 So.3d at 886.
In discussing implied preemption in Sarasota Alliance, the Florida Supreme Court stated:
Sections 316.002 and 316.007, Florida Statutes (2014), both provide express preemption for chapter 316. Section 316.002 preempts local regulation of traffic laws, except as expressly permitted, and states:
Preemption is implied “when ‘the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature.’ ” Phantom, 894 So.2d at 1018 (quoting Tallahassee Mem’l, 681 So.2d at 831). Implied preemption is found where the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme. Tribune Co. v. Cannella, 458 So.2d 1075, 1077 (Fla.1984) (finding that the legislative scheme of the Public Records Act preempted the law relating to production of records for inspection). In determining if implied preemption applies, the court must look “to the provisions of the whole law, and to its object and policy.” State v. Harden, 938 So.2d 480, 486 (Fla.2006) (quoting Gade v. Nat’l Solid Wastes Mgmt. Ass’n, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)). The nature of the power exerted by the Legislature, the object sought to be attained by the statute at issue, and the character of the obligations imposed by the statute are all vital to this determination. Id.

Id.

A local government cannot forbid what the Legislature has expressly licensed, authorized, or required, nor may it authorize what the Legislature has expressly forbidden. Rinzler v. Carson, 262 So.2d 661 (Fla.1972). Express preemption, not surprisingly, occurs when “a statutory provision stating that a particular subject is preempted by state law or that local ordinances on a particular subject are precluded.” Masone v. City of Aventura, 147 So.3d 492, 495 (Fla.2014).
It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. The Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic *785 that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this, chapter.
(Emphasis added). Section 316.007 is also expansive in its preemption and states:
Provisions uniform throughout state. The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized. However, this section shall- not prevent any local authority from enacting an ordinance when such enactment is necessary to vest jurisdiction of violation of this chapter in the local court.
(Emphasis added). The express preemption established by sections 316.002 and 316.007 has been interpreted by the Florida Supreme Court as “broad preemption.” Masone, 147 So.3d at 496.
The question then becomes whether the ordinances at issue impact areas expressly preempted by sections 316.002 and 316.007; if not, do any other provisions of Florida law require express or implied preemption, or are they in conflict; and if the ordinances would otherwise be preempted, whether they are nonetheless permissible under section 316.008.

Equipment Requirements

“Chapter 316 could not be clearer in providing that local ordinances on ‘a matter covered by the chapter are preempted unless an ordinance is ‘expressly authorized’ by the statutes.” Masone, 147 So.3d at 496-97 (citing § 316.007, Fla. Stat.). We hold that the local governments’ requirements to wear a vest is a matter covered by chapter 316 and is expressly preempted.
Section 316.003, Florida Statutes, contains ninety-three definitions applicable to chapter 316. In section 316.003(77), a moped is defined as a vehicle which has a seat or saddle, has less than two brake horsepower and is not capable of greater than 30 mile per hour speed, has pedals, and has an engine less than 60 cubic centimeters. In section 316.003(21), a motor vehicle is defined to specifically exclude bicycles, motorized scooters, and mopeds. In section 316.003(22), a motorcycle is defined as á vehicle which has a seat or saddle and has no more than three wheels. The definition of a motorcycle has no mention' of minimum miles per hour, horsepower, or engine size. In section 316.003(82), motorized scooter is defined as a vehicle having no seat or saddle and not capable of exceeding 30 mile per hour speed. In section 316.003(76), vehicle is defined as every device in, upon, or by which any person may be transported on a highway.
The local governments define a type of vehicle they call motor scooters, motor-scooters, or scooters. See § 24-91(g), Bay County Code; § 22-05, Panama City Beach Code. With the exception of mopeds and the four-wheeled vehicles defined as motor scooters or scooters under the Panama City Beach Code, all other of these vehicles, whether called motor scooters, motorscooters, or scooters by the local governments, are motorcycles under chapter 316. § 316.003(22), Fla. Stat. The four-wheeled vehicle called a motorscooter,. or scooter under the Panama City Beach Code is a motor vehicle under Florida law. See § 316.003(21), Fla. Stat. Motorcycles, *786 mopeds, and motor vehicles are mentioned extensively in chapter 316, All of the vehicles sought to be regulated by the local governments are covered by chapter 316.
Chapter 316, Florida Statutes, has numerous statutes governing the operation of vehicles including the equipment required, Section 316.208 provides that any person operating a motorcycle or moped shall be granted all of the lights and shall be subject to all of the duties applicable to the driver of any other vehicle under chapter 316. Section 316.2085 provides regulations related to the operation of motorcycles or mopeds. Section 316.2095 concerns motorcycles, requiring footrests for passengers, and regulates handlebars. Section 316.211 lists equipment required for motorcycle and moped riders. That section specifies who has to wear headgear on motorcycles and provides that, all riders have to wear eyewear on motorcycles, unless it is motorcycle with a motor less than 50 cubic centimeters or less than 2 horsepower, and not capable of exceeding 30 mile per hour. Section 316.405 requires motorcycle headlights to be turned on during operation. Sections 316.410 through .420 require taillamps, reflectors, and stop lamps. Section 316.425, details when lamps are required on parked motorcycles. Section 316.435 discusses the intensity of lamps which must be used on motorcycles. Section 316.440 sets forth the requirements for brakes on motorcycles; section 316.445 sets forth the requirements for performance ability of motorcycle brakes; and section 316.450 allows for inspection of motorcycle brakes. Section 316.46 sets forth the safety requirement for mopeds. Given all of these statutes, it is plain that chapter 316 provides broad regulation of the area of vehicle safety equipment.[5] Therefore, we agree with Appellant that the local governments’ vest requirements concerns equipment related to the operation of these vehicles, an area covered by chapter 316 and therefore expressly preempted. See Masone; City of Orlando v. Udowychenko, 98 So.3d 589 (Fla. 5th DCA 2012); Op. Att’y Gen. Fla.1977-84; 1986-98; 2001-11; 2008-11 (opinions of four different Attorneys .General finding that local authorities cannot mandate safety equipment beyond that required by chapter 316).[6]

*787
Insurance Requirements

We also hold that the local governments’ insurance requirements attempt to regulate a matter covered by chapter 316 and are expressly preempted. Chapter 316 has various statutes concerning security or insurance requirements.[7] Section 316.646 states the requirement to maintain property damage liability security, typically insurance. This section incorporates section 324.022 regarding financial responsibility for property damage. In section 324.022 motor vehicle is defined to only refer to four-wheeled vehicles, and requires owners or operators of four-wheeled vehicles to maintain $10,000 in security (again typically insurance) for damage to property of others.[8] There is no requirement for bodily injury coverage for most owners or operators of any motor vehicle in Florida.[9]
Section 316.211(3)(b) imposes an insurance requirement for medical benefits on a motorcycle operator if the operator is at least 21 years old and wants to ride without a helmet. This is the only insurance required by Florida law for most owners or operators of motorcycles.[10] There is no requirement under Florida law for insurance for mopeds or motor scooters. The local ordinances- require motorcycle, moped, and motor scooter lessors to maintain property liability coverage when Florida law does not require it. The local ordinances require bodily injury coverage for all rented vehicles when Florida law does not require it for any drivers except those who have caused a crash or have been convicted of driving under the influence. The specific provision in the local governments’ ordinances concerning insurance when operating a vehicle fall under the express preemption of section 316.007 because the ordinances impose an insurance requirement on vehicles otherwise not required to maintain insurance.
The local governments cite to Phantom of Brevard, Inc. v. Brevard County, 3 So.3d 309 (Fla.2008), in support of their contention that local governments can impose the insurance required by the ordinances. In Phantom of Brevard, the Florida Supreme Court construed section 791.001, Florida Statutes, a statute which concerns fireworks, and concluded it does not preempt a county’s regulation of fire *788 works. In fact section 791.03, Florida Statutes, allows counties to require a bond from firework sellers and sets only a minimum amount. The regulatory scheme for firework sellers has no express preemption and specifically permits counties to require a higher bond than Florida law requires, showing that the area of regulation has not been expressly preempted. Thus, we find Phantom of Brevard to be distinguishable because the broad preemptions in sections 316.002 and 316.007 preclude supplemental ordinances covering the subject of chapter 316 other than as allowed by section 316.008.
Even if the local governments’ insurance requirements were not expressly preempted by chapter 316, they are impliedly preempted by the pervasive scheme of regulation set forth in Florida law. “Implied preemption- is found where the state legislative scheme of regulation is pervasive and.the local legislation would present the danger of conflict with that pervasive regulatory scheme.” Sarasota Alliance, 28 So.3d at 886; Masone, 147 So.3d at 495.
Section 316.646, along with chapter 324 dealing with financial responsibility for owners and operators of motor vehicles, and the.no fault law in sections 627.730 through 627.7405, create a comprehensive system for requiring insurance for certain vehicles under Florida law. Section 324.021(9)(b)2. limits the potential liability of lessors of motor vehicles (defined in section 324.021(1), to include motorcycles for the purpose of that section, but to not include mopeds),' but does not require lessors or lessees to maintain any coverage beyond what is mandated by other provisions of Florida law. A review of these statutes shows the Legislature has created a pervasive scheme of regulation, coverage requirements, and limitation of liability, including specific requirements for coverage necessary to operate various motor vehicles in Florida. Thus, the ordinances are an attempt to regulate in an area well-covered by existing statutes. The local governments’ ordinances attempting to mandate insurance are therefore impliedly preempted. See Sarasota Alliance, 28 So.3d at 886; Udowychenko, 98 So.3d at 595; Tallahassee Mem’l Reg’l Med. Ctr. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 831 (Fla. 1st DCA 1996).
The local governments also cite to Sarasota Alliance, but we find that distinguishable as well. At issue in Sarasota Alliance was an amendment to Sarasota County’s charter regarding the conduct of elections. 28 So.3d at 884. The Supreme Court noted that the Florida Election Code delegates certain duties and responsibilities to local authorities, and there was no implied preemption by the State in the area of election laws.[11] Id. at 886-87. Furthermore, in Sarasota Alliance, the Florida Supreme Court found there was not implied preemption because of the extensive involvement of boards of county commissioners and supervisors of election in elections. Id. at 886-87. Unlike the Election Code, chapter 316 is comprehensive and does not plainly acknowledge a role for local authorities, other than specifically granted in section 316.008. Here, there - is no grant of authority to local officials to be involved with motor vehicle coverage and we find the Legislature has impliedly preempted the field of motor vehicle insurance.

Experimental Regulation to Cover Special Conditions?

Finally, we look to chapter 316 again to determine if the Legislature has *789 created an exception to the preemption of the ordinances. Section 316.002 does allow municipalities to control certain traffic movement or parking as provided by section 316.008. Section 316.008(1) sets forth in 23 subsections subject matter in which “[t]he provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power” from regulating. But few provisions of section 316.008 could apply the ordinances at issue here. The local governments argue that section 316.008(l)(t), which allows local governments to adopt “temporary or experimental regulations as may be necessary to cover emergencies or special conditions,” applies to the ordinances thereby exempting them from the express preemption created by sections 316.002 and 316.007. The local governments acknowledge that the ordinances are not temporary and no emergency conditions apply, but nonetheless argue that the ordinances are experimental and address special conditions. While experimental and special conditions are not defined by chapter 316, we find that the local governments read these provisions so broadly that their proposed exceptions would swallow the doctrine of preemption.[12]
“Judicial interpretations of statutes are pure questions of law subject to de novo review.” Johnson v. State, 78 So.3d 1305, 1310 (Fla.2012). “Experiment” is defined as a “test” or a “trial.” Merriam-Webster Online Dictionary, http://www.merriam-webster.com (last visited August 16, 2016). The local governments do not identify what is being tested or when-the test will end. They do not identify what they hope to confirm or disprove from the experiment.[13] The vest and insurance requirements are not experimental, and since section 316.008(1)(t) sets forth a two-pronged test before an exception to preemption can be made, the fact that no experiment is being conducted is a sufficient basis to prohibit the application of the exception in section 316.008(1)(t) to avoid preemption.
Furthermore, the “special conditions” the local governments point to are untrained and unruly tourists operating the subject vehicles in a haphazard manner in a beach resort area of limited size. The trial court had evidence of the problems caused by the operators of the vehicles. But with over 100 million tourists visiting Florida each year, it cannot be said that the local governments here are unique in receiving, along with the substantial benefits of tourist, the detriments tourists can bring at times, http://www.visitflorida.org/ resources/research (last visited August 16, 2016). We agree with Appellant’s argument that the trial court improperly interpreted “special conditions.” We find that the special conditions which can be regulated by 316.008(l)(t) are things unique to the local community. Things like a road outage, a parade, a hurricane, a sporting event, a protest, a street festival, and the like would fall under the definition of special conditions. For better or for worse, tourists on a beach, even if misbehaving, *790 do not meet the definition of a special condition in the State of Florida. Any solution to the local governments’ concerns with tourists on rented motor vehicles not wearing safety vests or having insurance lies with the Legislature.[14]
Finally, the local governments cite to Thomas v. State, 583 So.2d 336 (Fla. 5th DCA 1991), as authority for the ordinances. But Thomas is also distinguishable because regulation of bicycles is specifically allowed by section 316.008(1)(h). The vehicles which the local governments attempt to regulate with the ordinances are not bicycles and thus do not fall under the exception in section 316.008(1)(h).
Therefore, for the reasons set forth above, we REVERSE the final judgment of the trial court that the local governments’ ordinances are constitutional, and REMAND the matter to the trial court for proceedings consistent with this opinion.
M.K. THOMAS, J., and BEVERLY, THOMAS M., Associate Judge, concur.

. Charter counties have greater power. See Art. VIII, § 1(g), Fla. Const.

, These minimum coverage requirements were subsequently reduced after the local governments' motion for summary judgment was granted but before the final judgment was entered. Bay County Ordinance 15-41. Bay County now requires $10,000 injury coverage for one person and $20,000 injury coverage for two or more persons. Id. The property damage coverage has been reduced to $10,000. Id.

. Both of the local governments’ codes and ordinances impose various other requirements related to the owner or operator of certain rented vehicles. Those requirements were not challenged below and are not addressed here.

. Because of our holding based on preemption, we do not address conflict as a basis to find the local ordinances inconsistent with Florida law.

. Although the parties did not discuss any distinction in regulation or preemption between the vehicles based on whether they were called motorcycles, mopeds, or motor vehicles, it is clear in addition to numerous specific requirements for motorcycles and mopeds, Chapter 316 has numerous provisions related to the safety requirements of motor vehicles. See, e.g., § 316.156 (signal lamps), § 316.215 (vehicles in unsafe condition), § 316.216 (approval of lighting devices), § 316.217 (when lighted lamps are required), § 316.220 (headlamps), § 316.221 (tail-lamps), § 316.222 (stop lamps and turn signals), § 316.2395 (headlamps), § 316.2396 (driving lamps), § 316.241 (sale or use of approved lamps or equipment), § 316.251 (maximum bumper height), § 316.261 (brake equipment), § 316.262 (performance ability of brakes), § 316.263 (maintenance of brakes), § 316.271 (horns and warning devices), § 316.272 (exhaust system), § 316.293 (noise), § 316.2935 (air pollution control equipment), § 316.2937 (emissions standards), § 316.294 (mirrors), § 316,2952 (windshields), § 316.2953 (side windows), § 316.2954 (windows behind driver), § 316.2955 (window sunscreening material), § 316.299 (ban on rough surfaced wheels), § 316.303 (ban on television receivers), § 316.304 (ban on headsets), §§ 316.500-316.555 (weight and length limits), 316.600 (health and sanitation hazards), § 316.610 (safety of vehicle), § 316.613 (child restraint requirements), and § 316.614 (safety belt usage).

. “Although an opinion of the Attorney General is not binding on a court, it is entitled to careful consideration and generally should be regarded as highly persuasive.” State v. Family Bank of Hallandale, 623 So.2d 474, 478 (Fla.1993).

. Florida motor vehicle insurance law is such a cross-referenced labyrinth that one might assume a Minotaur of motor vehicle insurance lurks deep within it, ■

. Section 316.646 also incorporates the requirement to maintain personal injury protection as required by section 627,733, Florida Statutes (2014). Section 627.733 in turn references sections 627.730 through 627.7405. These provisions of the Florida Motor Vehicle No-Fault Law require owners of four-wheeled motor vehicles to maintain $10,000 in personal injury protection security. §§ 627.733 and 627.736, Fla. Stat. The local ordinances do not have a requirement for personal injury protection.

. Owners or operators of motor vehicles'who are convicted of driving under the influence have to maintain bodily injury coverage, with policy limits of at least $100,000 for one person, and $300,000 for two or more persons in a crash. § 324.023, Fla. Stat. Owners and operators of motor vehicles involved in a crash must also maintain bodily injury coverage in the amount of at least $10,000 per person and $20,000 per crash to avoid a license suspension. §§ 324.021(7) and (8), 324.031, and 324.051(2), Fla. Stat.

.After á motorcycle has been in a crash, the owner or operator must provide proof of bodily injury coverage in the amount of at least $10,000 per person and $20,000 per crash to avoid a license suspension. §§ 324.021(7) and 324.051(2), Fla, Stat. Owners or operators of motorcycles who are convicted of driving under the influence have to maintain bodily in- , jury coverage, with policy limits of at least $100,000 for one person, and $300,000 for two or more persons in a crash. § 324.023, Fla. Stat.

. Subsequent to the Sarasota Alliance decision, the Florida Legislature preempted all matters in Chapters 97 through 105, except as specifically authorized by state or federal law. See § 97.0115, Fla. Stat.

. We do not address Appellant’s argument that the ordinances do not concern traffic movement or parking excepted from preemption by section 316,002, and therefore could not fall under any exception to express preemption under section 316.008.

. The local governments would read “experiment” in a broad sense. While it is conceivable that local governments could act as “laboratories for devising solutions to difficult legal problems,” Oregon v. Ice, 555 U.S. 160, 171, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), we do not read section 316.008(1)(t) so broadly as to allow local governments to do whatever they want related to regulation of vehicles, as long as the ordinance is called an experiment.

. The Legislature has recently been responsive to local concerns in adopting section 2016-239, Laws of Florida, which created .section 316.2069, Florida Statutes (2016), permitting local regulation of commercial megacycles.