# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

Case No. 5D2023-3739
LT Case No. 05-2022-CA-038303-X

———————————————

CITY OF TITUSVILLE,

    Appellant,

    v.

SPEAK UP TITUSVILLE, INC.,

    Appellee.

———————————————

On appeal from the Circuit Court for Brevard County.
George Paulk, Judge.

Leonard M. Collins, of GrayRobinson, P.A., Tallahassee for
Appellant.

Taylor Therese-Copeland Lang, Boynton Beach, and Richard J.
Grosso, of Richard Grosso, P.A., Plantation, and Melissa Martin,
Eugene, OR, for Appellee.

December 26, 2024

PER CURIAM.

    Speak Up Titusville, Inc. ("Speak Up") is a Florida not-for-profit corporation that advocates for clean waters in Titusville, Florida ("City") and throughout Florida. In 2022, Speak Up sponsored a citizens' initiative petition to amend the City of Titusville Charter. The ballot initiative, which would amend the

City's charter to create a city-wide right to clean water, was approved overwhelmingly by the City's electorate.

Two weeks following the passage of the initiative, the City filed its second amended complaint seeking, inter alia, a declaratory judgment as to whether the charter amendment is preempted by state law thereby relieving the City of its duty to incorporate the amendment into its charter. The trial court ultimately heard competing motions for summary judgment, and agreed with Speak Up that the charter amendment was not preempted. The court denied the City's motion and granted, in part, Speak Up's motion, requiring the City to codify the charter amendment. This appeal followed.

An appellate court's standard of review in determining whether Florida law preempts a city's proposed charter amendment is de novo. *See City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1241 (Fla. 2006) (holding whether municipal ordinance is preempted by state law "is a question of law subject to de novo review"). The City argues that the charter amendment is expressly preempted by section 403.412(9), Florida Statutes.[1] We agree and reverse.

The Florida Constitution recognizes the power of municipalities "to conduct municipal government, perform municipal functions and render municipal services." Art. VIII, § 2(b), Fla. Const. In this regard, the Florida Supreme Court has recognized that a "municipality is given broad authority to enact ordinances under its municipal home rule powers." *Masone v. City of Aventura*, 147 So. 3d 492, 495 (Fla. 2014) (quoting *Mulligan*, 934 So. 2d at 1243). However, municipal ordinances must yield to state statutes. *Id*. Article VIII, section 2(b) of the Florida Constitution specifically recognizes that municipalities "may exercise any power for municipal purposes *except as otherwise provided by law*."

---

[1] Because of our holding that the proposed charter amendment is expressly preempted by state law, we need not address the City's additional issues on appeal, including that the amendment is impliedly preempted and that the ballot title and summary were legally insufficient.

(emphasis added). "The critical phrase of article VIII, section 2(b)—'except as otherwise provided by law'—establishes the constitutional superiority of the Legislature's power over municipal power." *Masone*, 147 So. 3d at 495.

The Florida Legislature has emphasized its constitutional authority over municipal power by providing that a "municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except: any subject expressly preempted to state or county government by the constitution or by general law." § 166.021(3)(c), Fla. Stat. (2022). Florida law has long recognized the concept of express preemption. "[E]xpress preemption requires a specific legislative statement—it cannot be implied or inferred—and the preemption of a field is accomplished by clear language." *D'Agastino v. City of Miami*, 220 So. 3d 410, 421 (Fla. 2017). Preemption by state law "need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject." *Masone*, 147 So. 3d at 495 (quoting *Barragan v City of Miami*, 545 So. 2d 252, 254 (Fla. 1989)).

Therefore, our determination of whether the charter amendment is expressly preempted begins with an analysis of the specific language used in both the proposed amendment and in section 403.412(9)(a). The first three sections of the proposed charter amendment provide as follows:

> **1. Right to Clean Water.** Residents of the City of Titusville possess the right to clean water, which shall include the right to Waters of Titusville which flow, exist in their natural form, are free of pollution, and which maintain a healthy ecosystem.

> **2. Violations.** Governmental or corporate entities shall not engage in any alleged, proposed or continuing activity which violates the rights secured by this Charter.

> **3. Remedies.** Any resident of Titusville may bring a legal action, in the name of the resident or in the name of the Waters of Titusville, in a court of

appropriate jurisdiction to enjoin violations of the right to clean water. Remedies shall include injunctive relief to enjoin the violation and monetary damages to restore the waters to their pre-damaged state.

In contrast, section 403.412(9)(a) states as follows:

A local government regulation, ordinance, code, rule, comprehensive plan, charter, or any other provision of law may not recognize or grant any legal rights to a plant, an animal, a body of water, or any other part of the natural environment that is not a person or political subdivision as defined in s. 1.01(8) or grant such person or political subdivision any specific rights relating to the natural environment not otherwise authorized in general law or specifically granted in the State Constitution.

In determining whether the charter amendment is expressly preempted by section 403.412(9)(a), the issue here is whether granting residents of Titusville the "right to clean water," and allowing them to bring an action in the name of the Waters for injunctive relief and for monetary damages is "authorized in general law or specifically granted in the State Constitution." The City relies on *Wilde Cypress Branch v. Hamilton*, 386 So. 3d 1020 (Fla. 6th DCA 2024), to support its argument that the charter amendment is expressly preempted by section 403.412(9)(a). In that case, the plaintiffs, various bodies of water in Orange County and the President of Speak Up Wekiva, appealed the trial court's order dismissing their complaint challenging the issuance of a permit that violated the recently-enacted county charter amendment titled "Right to Clean Water." The charter amendment conferred rights on bodies of water within Orange County, provided injunctive relief as a remedy for any violation of those rights, and conferred standing on certain persons to enforce the charter amendment's provisions. The trial court first found that the charter amendment could not coexist with section 403.412(9)(a) because it granted rights to bodies of water in Orange County, which was expressly prohibited under the statute. It also found that the charter amendment impermissibly granted specific rights to citizens of Orange County not otherwise

4

authorized in general law or specifically granted in the Florida Constitution.

The Sixth District affirmed on appeal, finding that section 403.412(9)(a) preempted the charter amendment. The Sixth District determined that because the county charter recognized a right held by water bodies "to exist, Flow, to be protected against Pollution and to maintain a healthy ecosystem," the charter was indeed in conflict with and preempted by section 403.412(9)(a) based on the statute's language that precludes a charter from recognizing any legal rights to a plant, animal, or body of water. *Wilde Cypress*, 386 So. 3d at 1021.

The charter amendment in this case does not contain the identical language explicitly providing a right to a body of water as the Orange County charter in *Wilde Cypress* did—the right to exist, flow, and be protected from pollution. It does, however, implicitly grant rights to bodies of water by granting residents the ability to bring an action "in the name of the Waters of Titusville," and section 403.412(9)(a) expressly precludes a charter from recognizing a legal right to a body of water. In addition, there is no provision authorized in "general law or specifically granted in the State Constitution" that gives a citizen the right to file an action in the name of a body of water. Further, although it is an admirable goal, we know of no provision that is authorized in either general law or specifically granted in the State Constitution, nor has one been provided by Speak Up, which specifically provides a citizen the right to have a body of water that "flows, exists in its natural form, is free of pollution, and which maintains a healthy ecosystem."

The charter amendment also specifically grants residents the "right to clean water" which is defined in the amendment as "waters that are free of pollution." We acknowledge, as referenced by Speak Up, that the charter amendment's definition of pollution includes language from section 403.031(11), Florida Statutes (2022), which defines pollution, and section 403.021(6), Florida Statutes (2022), which describes the Legislature's public policy regarding pollution, but none of these provisions provide for the right to have water bodies that are "free" of pollution. In addition, while Florida has enacted general laws and regulations that

5

support the protection and enhancement of water quality and pollution control, neither the Florida Constitution nor other general law explicitly provides this right to clean water as defined in the charter amendment, which is a right "relating to the natural environment" and thus, expressly preempted by section 403.412(9)(a).

Speak Up cites to section 403.412(2)(a) to argue that because a citizen may maintain an action for injunctive relief to enforce laws and regulations for the protection of the water, the right given to Titusville residents in the charter amendment to enjoin violations of the right to clean water is thus a right authorized in general law. Indeed, pursuant to section 403.412, a citizen may seek, and a court may grant, injunctive relief and impose conditions on a defendant consistent with "any rules or regulations adopted by any state or local governmental agency which is charged to protect the air, water, and other natural resources of the state from pollution, impairment, or destruction." § 403.412(3), Fla. Stat. (2022). However, while this allows citizens to maintain actions for violations of laws pertaining to the protection of air, water, and natural resources, it does not confer a specific right to clean water or waters free from pollution. Additionally, it is noted that under section 403.412, a citizen is only authorized to bring an action for injunctive relief (and prevailing party attorney's fees), while the charter amendment also provides for monetary damages to restore the waters to their pre-damaged state. These types of monetary damages are not authorized in either general law or specifically granted in the State Constitution.

We recognize the overwhelming support of this charter amendment by the residents of the City of Titusville and the admirable policies of the amendment. However, the Legislature in drafting section 403.412(9)(a) of the Environmental Protection Act has not authorized the types of rights provided for in the charter amendment. As such, an appellate court has no power to change or alter what the Legislature mandated. *Fla. Dep't of Rev. v. Fla. Mun. Power Ag.,* 789 So. 2d 320, 324 (Fla. 2001) (holding that "under fundamental principles of separation of powers, courts cannot judicially alter the wording of statutes where the Legislature clearly has not done so. A court's function is to interpret statutes as they are written and give effect to each word

6

in the statute"). Nor is this Court able to interpret the charter amendment based on our view of the best policy. *See Rollins v. Pizzarelli*, 761 So. 2d 294, 299 (Fla. 2000).

Accordingly, the right to clean water, the right to enjoin any violations of that right, as an individual or in the name of a body of water, and the right to receive monetary damages for violations of that right, are specific rights granted to residents relating to the natural environment that are not authorized in general law. Therefore, consistent with the holding of our sister court in *Wilde Cypress*, we conclude that the charter amendment is in conflict with, and thus preempted by, section 403.412(9)(a). We reverse the summary judgment entered in favor of Speak Up and remand with instructions to enter summary judgment in favor of the City on its claim of express preemption.

REVERSED and REMANDED with instructions.

HARRIS, BOATWRIGHT and MACIVER, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____